David A. MAGERER,
Plaintiff, Appellant,

v.

JOHN SEXTON & CO., et al.,
Defendants, Appellees.

No. 90–1290.

United States Court of Appeals,
First Circuit.

Heard July 30, 1990.

Decided Aug. 30, 1990.

Lawrence D. Humphrey with whom Frederick T. Golder and Bernstein, Golder, Field & Miller, P.A., were on brief, for plaintiff, appellant.

Kenneth M. Bello with whom Karen K. Burns and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., were on brief, for defendants, appellees.

Before CAMPBELL and TORRUELLA, Circuit Judges, and RE,* Judge.

LEVIN H. CAMPBELL, Circuit Judge.

David Magerer ("plaintiff") brought this action for wrongful discharge against his former employer, John Sexton & Co. ("Sexton") and his former supervisor, Robert Valley, in Massachusetts state court. The defendants removed the action to the United States District Court for the District of Massachusetts, citing Section 301 of the Labor Management Relations Act ("LMRA"). The district court denied plaintiff's motion to remand the action to state court and granted defendants' motion to dismiss the complaint. Plaintiff appeals. We affirm.

## BACKGROUND

In March 1988, plaintiff began working for Sexton as a food selector at Sexton's plant in Norwood, Massachusetts. In May 1988, plaintiff was injured on the job and in July 1988, he suffered a second job-related injury. Each injury resulted in plaintiff missing several days of work. On August 3, 1988, when he returned to work following his second injury, his supervisor, Robert Valley, informed him that his employment with Sexton was terminated.

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

In March, 1989, plaintiff brought this action against Sexton and Valley in Massachusetts state court. The four count complaint alleges that the defendants wrongfully discharged plaintiff from his employment, without proper cause, and in retaliation for filing claims under the Massachusetts Workers' Compensation statute. Count I alleges that the discharge constituted a breach of an employment contract. Count II alleges a common law claim for retaliatory discharge in violation of Massachusetts public policy. Count III alleges a violation of Mass.Gen.Laws ch. 152 § 75B, which prohibits dismissal in retaliation for exercise of rights under the Massachusetts Workers' Compensation Act.[1] Count IV alleges a claim against Valley for intentional interference with contractual relations.

Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441, alleging that counts I, III, and IV were preempted by Section 301 of the LMRA so as to fall within the district court's federal question jurisdiction.[2] Plaintiff moved to remand the action to state court for lack of federal jurisdiction. Defendants opposed this motion and moved to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment.

The district court denied plaintiff's motion to remand and granted defendants' motion to dismiss. *See Magerer v. Sexton & Co.*, 727 F.Supp. 744 (D.Mass.1990). As to the jurisdictional issue, the court held that plaintiff's breach of contract claim would require interpretation of the collective bargaining agreement between Sexton and its employees and, as such, this claim constituted a federal cause of action under Section 301, within the court's removal jurisdiction, bringing the other claims within the court's pendent jurisdiction. *Id.* at 747–48.

On the motion to dismiss, the court held that the breach of contract claim, the ch. 152 § 75B claim, and the intentional interference with contractual relations claim were dependent on an interpretation of the collective bargaining agreement and were therefore preempted by Section 301. 727 F.Supp. at 748–50. Treating these three claims as federal claims under Section 301, the court held that they must be dismissed for failure to comply with the federal requirement of exhaustion of the agreement's grievance and arbitration procedures. *Id.* at 750. As to the common law retaliatory discharge claim, the court held that this was barred by the Massachusetts statutory scheme contained in ch. 152 § 75B. *Id.* at 750–51. The district court subsequently denied plaintiff's motion for reconsideration. This appeal followed.

## DISCUSSION

### I. *Jurisdiction*

■ The first issue raised by plaintiff on appeal is whether the district court proper-

---

1. Section 75B, which is part of the Massachusetts Workers' Compensation statutes, provides, in part:

   (2) No employer or duly authorized agent of an employer shall discharge or refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter, or who has testified or in any manner cooperated with an inquiry or proceeding pursuant to this chapter, unless the employee knowingly participated in a fraudulent proceeding. Any person claiming to be aggrieved by a violation of this section may initiate proceedings in the superior court.... An employer found to have violated this paragraph shall be exclusively liable to pay the employee lost wages, shall grant the employee suitable employment, and shall reimburse such reasonable attorney fees incurred in the protection of rights granted as shall be determined by the

court. The court may grant whatever equitable relief it deems necessary to protect rights granted by this section.
(3) In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail. An employee may not otherwise waive rights granted by this section.
Mass.Gen.Laws ch. 152 § 75B.

2. Section 301(a) of the LMRA provides:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
   29 U.S.C. § 185(a).

ly exercised removal jurisdiction over his claims. In the absence of diversity jurisdiction, the district court generally has jurisdiction "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Under a well established exception to the "well pleaded complaint rule," however, any state law claim which is subject to complete preemption under Section 301 of the LMRA is considered a claim arising under federal law within the district court's jurisdiction. *See generally Caterpillar*, 482 U.S. at 393–94, 107 S.Ct. at 2430–31. Section 301 completely preempts a state law claim, "if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). *See also Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430 (section 301 completely preempts claims which are "substantially dependent on analysis of a collective-bargaining agreement"); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by labor-contract law.") (citation omitted). Where such preemption is applicable, "federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute." *Lingle*, 486 U.S. at 406, 108 S.Ct. at 1881.

Plaintiff does not dispute that an employee's state law claims against his employer are subject to complete preemption if the claims are dependent on the interpretation of a collective bargaining agreement. He argues, however, that his employment relationship with Sexton was not covered by a collective bargaining agreement and, therefore, the district court erred in holding that three of his claims were preempted.

■ We find no merit in this argument. As the district court ruled, the record conclusively demonstrates that plaintiff's employment became subject to a collective bargaining agreement when his probationary period ended in May 1988. *Magerer*, 727 F.Supp. at 748. Defendants submitted to the district court the affidavit of Sexton's Director of Labor Relations. The affidavit states that Sexton's warehouse employees, including plaintiff, are covered by a collective bargaining agreement, following an initial probationary period of thirty consecutive working days of employment. The collective bargaining agreement reflecting these terms was attached as an exhibit to the affidavit. Plaintiff's failure to controvert this affidavit in the face of defendants' motion for summary judgment justified the district court's ruling that, as a matter of law, plaintiff's employment with Sexton was governed by the collective bargaining agreement at the time of his discharge. *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (the district court "properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction").

After the district court rendered its opinion, plaintiff filed a motion for reconsideration, and submitted an affidavit stating that he had been told by Sexton management that he was not a union member and was not eligible to be made part of the collective bargaining unit, because he was still a probationary employee. However, plaintiff's affidavit does not dispute that, as reflected in the affidavit submitted by defendants and in the collective bargaining agreement itself, the probationary period ended after 30 consecutive days of employment. Moreover, plaintiff's affidavit does not state that he was told after the 30 day period that he was still a probationary employee. Consequently, plaintiff has failed to raise any genuine issue of fact as to whether he was covered by the collective bargaining agreement at the time of his discharge.

■ Plaintiff argued in the district court that even if he was subject to a collective bargaining agreement, he also had an independent, implied employment contract with Sexton, and that claims based on this contract would not be preempted. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) ("a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement"). The district court properly rejected this argument because the complaint does not allege the existence of a contract independent from the collective bargaining agreement, and because plaintiff failed to submit any factual affidavit that would carry him over the summary judgment hurdle on this issue. *Magerer,* 727 F.Supp. at 749.

■ Plaintiff has apparently abandoned this argument on appeal, and instead argues that the district court lacked jurisdiction over this action, because he voluntarily waived his breach of contract claim in open court, and his other claims were not dependent on the collective bargaining agreement. Assuming, however, that plaintiff did in fact withdraw his breach of contract claim, this would not divest the district court of jurisdiction for two reasons. First, whether jurisdiction exists is determined based on the state of the complaint at the time of removal. *See, e.g., Brown v. Southwestern Bell Telephone Co.,* 901 F.2d 1250, 1254 (5th Cir.1990). Second, as we conclude below, plaintiff's retaliatory discharge claim and his claim for intentional interference with contractual relations were also subject to complete preemption under Section 301, so as to bring the action within the district court's removal jurisdiction.

## II. *Preemption of the Statutory Retaliatory Discharge Claim*

■ Plaintiff argues that the district court erred in holding that his claim for retaliatory discharge under Mass.Gen.Laws ch. 152 § 75B is preempted. He contends that this claim, being based on a cause of action established by state law, is wholly independent of rights and liabilities established by the collective bargaining agreement and that its resolution would not require interpretation of the agreement. Plaintiff relies primarily on *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), in which the Court held that Section 301 did not preempt a claim for retaliatory discharge under Illinois law, because under · the applicable principles of Illinois law, such a claim is " 'independent' of the collective-bargaining agreement [and] resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id.* at 407, 108 S.Ct. at 1882.

Unlike the Illinois claim for retaliatory discharge, however, under Massachusetts law, such claims are, by the express terms of the statute, subject to the terms of any applicable collective bargaining agreement. Subsection (3) of Mass.Gen.Laws ch. 152 § 75B states:

> In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail. An employee may not otherwise waive rights granted by this section.[3]

This provision makes clear that to the extent that the collective bargaining agreement provides standards to govern the conduct underlying plaintiff's retaliatory discharge claim, the claim will be governed by the standards of the agreement, rather than by the standards of ch. 152 § 75B. And to that extent, claims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301. *See Lingle,* 486 U.S. at 408 n. 7, 108 S.Ct. at 1882 n. 7 ("if a law applied to all state workers but required, at least in certain instances, collective-bar-

---

**3.** In contrast, under the principles of Illinois law which were at issue in *Lingle,* "the parties to a collective-bargaining agreement may not waive the prohibition against retaliatory dis-
charge nor may they alter a worker's rights under the state worker's compensation scheme." *Lingle,* 486 U.S. at 409–10 n. 9, 108 S.Ct. at 1883–84 n. 9.

gaining agreement interpretation, the application of the law in those instances would be pre-empted"); *Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 118 (1st Cir. 1988) ("If state-law rights and obligations do not necessarily 'exist independently of private agreements,' they 'can be waived or altered by agreement of private parties.' And to that extent, they can be, and are, preempted by the protective gloss which section 301 provides to those agreements.") (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985)), *cert. denied,* —— U.S. ——, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir.1988) ("Because the CBA, rather than a nonnegotiable state law standard, defines [the rights of the parties] with regard to the conduct complained of, [the] claims are not independent of the CBA."). *See generally Miller v. AT & T Network Systems*, 850 F.2d 543, 548 (9th Cir.1988) (if the "CBA contains provisions that govern the actions giving rise to a state claim" and the state has not shown an intent to prohibit the state law at issue from being "altered or removed by private contract," then the state law claim is preempted).

The collective bargaining agreement at issue here contains several provisions that could be construed to govern the conduct underlying plaintiff's retaliatory discharge claim. Most significantly, the agreement's "management rights" clause vests in the employer, among other rights, the right to determine "the direction of the work forces, including the disciplining, suspension or *discharge of employees for proper cause.*" (emphasis added). As the *Lingle* Court itself suggested, a discharge that is improper under state law standards will not in every instance be improper under the collective bargaining agreement standards governing employee discharge for proper cause.

> For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law.

486 U.S. at 413, 108 S.Ct. at 1885.

Thus, under Mass.Gen.Laws ch. 152 § 75B(3), the rights and obligations of Sexton and plaintiff regarding plaintiff's discharge are controlled by the contractual provisions governing discharge and not by an independent state standard. It follows that the resolution of plaintiff's statutory retaliatory discharge claim depends on an interpretation of the collective bargaining agreement, so that the claim is completely preempted by Section 301. *See Jackson v. Liquid Carbonic Corp.*, 863 F.2d 111, 118 (1st Cir.1988) ("[Plaintiff's] claims do not rest upon inalterable state-law rights which float free of, and therefore do not require interpreting, the collective bargaining agreement.... On the contrary, those claims can only, we believe, be resolved by scrutinizing and evaluating the explicit powers granted to management under the Agreement.").

## III. *Preemption of the Intentional Interference with Contract Claim*

■ Plaintiff argues that his claim against his supervisor, Valley, for intentional interference with contractual relations is not preempted, because the claim does not depend on an interpretation of the collective bargaining agreement. He contends that adjudication of this claim requires only a determination of whether there was a contract that Valley interfered with for an improper motive.

We do not accept this contention. First, the conduct that allegedly constituted the wrongful interference with contractual relations was taken by Valley in his capacity as supervisor, and hence, as an agent on behalf of plaintiff's employer, Sexton. *See Kneeland v. Pepsi Cola Metropolitan Co., Inc.*, 605 F.Supp. 137, 139 (D.Mass.1985) (claims against supervisory employees for malicious interference with contractual relations were preempted, because supervisors were acting as agents for employer whose conduct was governed by a collective bargaining agreement). Moreover, contrary to plaintiff's contentions, determining whether Valley improperly interfered with plaintiff's employment contract

requires an examination of the rights of plaintiff and Sexton under the collective bargaining agreement. Under Massachusetts law, to establish a claim of intentional interference with contractual relations, a plaintiff must show, among other things, that "he had a contract with a third party [and] the defendant knowingly induced the third party to break that contract." *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20, 21 (1990). The determination of whether Valley induced Sexton to break its employment contract with plaintiff would require the court to decide whether Sexton was entitled to discharge plaintiff under the terms of the collective bargaining agreement. In other words, the interference with contractual relations claim would require an interpretation of the collective bargaining agreement. It is therefore preempted by Section 301. *See Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 624 (8th Cir.1989) ("Count III, alleging tortious interference with contractual relations, requires an examination of the collective bargaining agreement and the scope of the employment relationship.... This count is inextricably intertwined with the collective bargaining agreement and is preempted by section 301."). *Cf. Beard v. Carrollton Railroad*, 893 F.2d 117, 122 (6th Cir.1989) (where breach of contract is essential element of state law claim for wrongful interference with contract, the claim would require interpretation of the collective bargaining agreement, and was therefore preempted by the federal Railway Labor Act).[4]

### IV. *Dismissal of the Preempted Claims*

Since plaintiff's claims relating to the collective bargaining agreement are completely preempted, the district court properly treated them as claims arising under Section 301. Plaintiff has not challenged the district court's ruling that such claims are subject to the requirement of exhaus-tion of the grievance procedures provided for in the collective bargaining agreement. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967) ("it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement"); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 219, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985) ("If respondent had brought a contract claim under § 301, he would have had to attempt to take the claim through the arbitration procedure established in the collective-bargaining agreement before bringing suit in court."). Nor has plaintiff challenged the district court's determination that "there is no evidence that [plaintiff] has grieved or arbitrated his claim under the grievance procedures of the [collective bargaining agreement]." 727 F.Supp. at 750. We therefore find no error in the district court's dismissal of counts I, III, and IV.

### V. *The Common Law Retaliatory Discharge Claim*

■ In count II of the complaint, plaintiff alleges a common law claim for retaliatory discharge in violation of "public policy." The district court ruled that this count failed to state a claim, because Massachusetts law would not permit a common law claim for retaliatory discharge where the legislature has provided a statutory scheme to govern such claims, in Mass. Gen.Laws ch. 152 § 75B. *Magerer*, 727 F.Supp. at 750–51. Plaintiff has included in his statement of the issues on appeal the question "whether or not the District Court erred in determining that the plaintiff did not state a valid common law claim for violation of public policy where the legislature has already provided for a remedy." However, plaintiff has offered no argument challenging the district court's reasoning. In any event, we can find no flaw in the district court's analysis, which is

---

4. In *Dougherty v. Parsec, Inc.*, 872 F.2d 766, 770–71 (6th Cir.1989), the court held that a tortious interference with contract claim under Ohio law, which did not require establishing an actual breach, was not preempted by Section 301. The Sixth Circuit's subsequent opinion in *Beard*, however, indicates that the court would reach a contrary result where the tortious interference claim required showing an actual breach, as Massachusetts law does. *See Beard*, 893 F.2d at 122 & n. 1.

fully supported by decisions of this court, *see, e.g., Grubba v. Bay State Abrasives,* 803 F.2d 746, 748 (1st Cir.1986), and of the Massachusetts courts, *see Mello v. Stop & Shop Companies, Inc.,* 402 Mass. 555, 524 N.E.2d 105, 106 & n. 2 (1988).[5]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed. Costs to appellees.

---

**5.** Plaintiff does not challenge the district court's exercise of pendent jurisdiction over the common law claim for retaliatory discharge and we have no reason to question the propriety of the court's decision in this regard. *See, e.g., Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 999 (9th Cir.1987) ("The district court could properly exercise pendent jurisdiction over the tort claims based on their close relation with the section 301 claim...."). 