September 27, 1993
[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1213

LEANDERS H. SMITH,

Plaintiff, Appellant,

v.

WGBH EDUCATIONAL FOUNDATION, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Boudin, Circuit Judges.

Leanders H. Smith on brief pro se.

Alan D. Rose, Diane G. Rosse, Marilee Denelle and Nutter,

McClennen & Fish on brief for appellee.

Per Curiam. Leanders H. Smith sued WGBH

Educational Foundation, Inc. (WGBH) in state court, alleging

that it had violated his rights under Massachusetts' workers'

compensation laws, M.G.L. ch. 152, 75A, 75B, when it

refused his request to return to work after being on a

disability leave during which he had received compensation

benefits. WGBH removed Smith's action to federal district

court, and moved for summary judgment, which the district

court granted. Smith is appealing that order as well as

orders denying motions that the court disqualify itself from

hearing Smith's case, remand his case to the state court, and

permit certain depositions to proceed. We affirm for the

reasons stated in the district court's orders, and elaborate

only as necessary to clarify the court's briefly stated

reasons.

1. Removal/Preemption. In Magerer v. John Sexton

& Co., 912 F.2d 525 (1st Cir. 1990), we held that a

retaliatory discharge claim brought under M.G.L. ch. 152,

75B, was completely preempted under section 301 of the Labor

Management Relations Act, 29 U.S.C. 185(a), where the

plaintiff was subject to a collective bargaining agreement

which contained a management rights clause giving the

employer/defendant the right to "discharge employees for

proper cause." Since the definition of "proper cause" under

the agreement could permit employer discharges not permitted

under section 75B, we found that the rights and obligations

of Magerer and his employer were controlled by the

contractual provisions governing discharge and not by any

independent state standard found in the workers' compensation

laws of Massachusetts. Id. at 530. In so doing, we relied

on the specific language in section 75B, which provided that,

if the rights granted employees under that section were

inconsistent with a collective bargaining agreement, the

agreement was to prevail. The collective bargaining

agreement between WGBH and the National Association of

Broadcast Employees and Technicians (NABET) contains

essentially the same clause as the one we considered in

Magerer. Article XIX of the agreement provides that "[t]he

right to discipline and discharge employees for just cause

shall remain the prerogative of [WGBH]." Thus, under

Magerer, Smith's section 75B claim requires interpretation of

the collective bargaining agreement and for that reason it is

completely preempted under section 301 of the Labor

Management Relations Act. Id.

The district court's conclusion that Smith's state

law claims were preempted was also correct with respect to

Smith's claim under section 75A. Like section 75B, section

75A states that an applicable collective bargaining agreement

which is inconsistent with the rights granted in section 75A

is to prevail over section 75A. Section 75A grants a

preference in hiring to any former employee who has lost a

job due to a compensable injury under workers' compensation

-3-

over other applicants not employed at the time when such

former employee

seeks to be rehired. As a general matter, Article 13.1 of

WGBH's collective bargaining agreement gives WGBH "the sole

and exclusive right to make all decisions regarding the

management, operation and programming of [its] operations,

including determination of the number of employees covered by

this Agreement," suggesting that WGBH may hire or not hire

employees as it sees fit and that it is not required to grant

any preference to former employees who have lost their

employment due to injuries compensable under Massachusetts'

workers' compensation law. More specifically, Article 17.3

of the agreement requires WGBH to rehire laid-off employees

according to seniority. For certain types of available work,

moreover, Article 3.7(a) also states a hiring preference

based on seniority for regular staff employees who have been

laid off. The seniority principle for rehiring laid-off

employees is inconsistent with section 75A's hiring

preference for employees laid off or discharged because of

injuries compensable under Massachusetts' workers'

compensation law. Thus, under the reasoning of Magerer,

Smith's section 75A claim requires interpretation of the

collective bargaining agreement and for that reason it, too,

is completely preempted.

-4-

Since Smith's claim is completely preempted under

section 301, it states a federal claim and thus arises under

federal law, Caterpillar, Inc. v. Williams, 482 U.S. 386, 393

(1987); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560

(1968); Magerer, 912 F.2d at 528, and not under Massachusetts

law. Consequently, 28 U.S.C. 1445(c), which prohibits the

removal to federal court of claims arising under a state

workmen's compensation law, does not apply, and removal of

the claim here was proper. See Vantine v. Elkhart Brass

Manufacturing Co., 762 F.2d 511, 517-18 (7th Cir. 1985)

(section 1445(c) did not bar removal of a claim brought under

a state's workmen's compensation laws; under the state's

laws, the cause of action arose under the collective

bargaining agreement and thus stated a federal claim under

section 301 which rendered removal to the district court

proper); Smith v. Union Carbide Corporation, 664 F. Supp.

290, 292 (E.D. Tenn. 1987) (section 1445(c) did not bar

removal of an action brought under a state's workmen's

compensation law because the plaintiff's suit was an

independent, judicially created tort action, and so did not

arise under the state's workmen's compensation laws, and

because it was preempted by federal labor law and therefore

arose under federal and not state law). 2. Smith's

Employment Status as of August 1989. If Smith was subject to

WGBH's collective bargaining agreement, dismissal of his suit

-5-

was proper since his only remedy for his discharge was resort

to the grievance and arbitration procedures of that

agreement. See Allis-Chalmers Corporation v. Lueck, 471 U.S.

202, 220-21 (1985). In affidavits, Smith claimed that his

employment at WGBH had ended before August 1989 and that he

was not subject to the WGBH-NABET collective bargaining

agreement. Accordingly, he argues that he was not bound by a

1990 arbitral decision which found that WGBH had discharged

him for just cause, and he says that he is free to sue in

court. In view of the overwhelming evidence to the contrary,

we find that his allegations do not establish the existence

of a genuine issue of material fact sufficient to defeat

WGBH's motion for summary judgment. Petitti v. New England

Telephone & Telegraph Co., 909 F.2d 28, 30 (1st Cir. 1990)

(summary judgment is proper if evidence is so one-sided that

one party must prevail as a matter of law).

Smith claims that his employment had terminated

before August 1989 under Article 17.2(f) of the collective

bargaining agreement. That article provided for loss of

seniority by employees absent from work due to injury for

more than 15 months, and was understood by the parties to

terminate the employment of such employees. As of August

1989, Smith had been on disability leave for more than 15

months, having begun his leave in February 1986. In an

affidavit, WGBH's Human Resources Director, Michael Enwright,

-6-

who negotiated WGBH's 1987-90 contract with NABET, stated

that WGBH had accepted the union's demand during those

negotiations that Smith be excluded from the operation of

Article 17.2(f). Smith's disability leave began in 1986,

when the 1984-87 contract was in effect, and Enwright stated

in his affidavit that that contract did not contain Article

17.2(f). Smith has not introduced any affidavit by the union

to the contrary, nor has he denied Enwright's sworn statement

that the 1984-87 contract did not contain Article 17.2(f).

In an affidavit, Smith states that John Plausse,

his direct supervisor, had told him during his leave that he

was not subject to the collective bargaining agreement.

Nevertheless, the pleadings, affidavits and underlying

documentary evidence submitted by the parties show

conclusively that, even if Plausse had told Smith that he was

not subject to the collective bargaining agreement, Smith

knew that his employment with WGBH had not been terminated

before August 1989 and that he continued to be subject to the

collective bargaining agreement. Among the many pieces of

evidence, we highlight only the following: Smith's complaint

stating that on or about November 22, 1989, WGBH had refused

to allow him to "return to work"; Smith's letter to WGBH on

August 2, 1989, notifying Enwright that Smith was changing

his "return to work" date from September 18, 1989, to

September 1, 1989, telling Enwright to let Plausse know of

-7-

the change so that Plausse could make necessary plans, asking

Enwright whether his vacation time had been adjusted and

informing Enwright that he would be taking the first two

weeks of October off; the arbitration transcript which

reveals that the union arbitrated Smith's November 22, 1989

discharge (for misconduct not at issue here), that Smith was

consulted about and approved NABET's and WGBH's selection of

an arbitrator, and that Smith attended the arbitration on

dates in 1989 and 1990 and actively assisted the union in

presenting evidence on his behalf; and Smith's affidavit

stating that he is still a member of NABET, a critical

admission since membership in the union is a condition of

employment under the collective bargaining agreement. See

Agreement Between NABET and WGBH Educational Foundation, Inc.

1987-1990, Art. 3.1. Although Smith argues that certain

letters and documents show that he was not an employee for

any purpose under the collective bargaining agreement during

his leave, those letters and documents show only that he was

not classified as an "active" employee at that time and thus

did not have the rights granted active employees under the

agreement (e.g., vacation, sick leave, and holiday benefits).

The collective bargaining agreement distinguishes clearly

between the rights of active employees and those of non-

active employees on leave of absence (see, e.g., id. Art.

9.5(c), 9.7; Art. XII); nowhere does it suggest that non-

-8-

active employees on leave are not in the bargaining unit or

not subject to the grievance and arbitration provisions of

the contract.

Smith's other claims are without merit for the

reasons stated in the orders being appealed.

Affirmed.

-9-