UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1863
THERESA MARTIN,

Plaintiff, Appellant,
v.

SHAW'S SUPERMARKETS, INC.,
Defendant, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Morris E. Lasker,* Senior U.S. District Judge] 


Before

Selya, Circuit Judge, 
Aldrich, Senior Circuit Judge, 

and Boudin, Circuit Judge. 


Scott W. Lang with whom Susan Forgue Weiner and Lang, Xifaras & 
Bullard, P.A., Lisa M. Sheehan, Kate Mitchell & Associates, Betsy L. 
Ehrenberg and Angoff, Goldman, Manning, Pyle & Wanger, P.C. were on 
briefs for appellant.
Betsy L. Ehrenberg with whom Harold L. Lichten and Angoff, 
Goldman, 
Manning, Pyle & Wanger, P.C. were on brief for United Food and 
Commercial Workers Local Union 791 and National Employment Lawyers
Association, Massachusetts Chapter, Amici Curiae.
Duane R. Batista with whom Sharon R. Burger and Nutter, McClennen 
& Fish, LLP were on brief for appellee. 



January 28, 1997


 

*Of the Southern District of New York, sitting by designation.

BOUDIN, Circuit Judge. This case, presenting a 

difficult preemption issue, began in January 1996 when

Theresa Martin sued Shaw's Supermarkets, Inc., in

Massachusetts state court for alleged violations of state

employment-compensation laws. Martin, an employee of Shaw's

since 1979, had injured her back in August 1994 while working

as a bakery clerk. In September 1994, she began receiving

workers' compensation benefits for temporary total

disability. Mass. Gen. Laws ch. 152, 34.

In March 1995, Shaw's requested that Martin's physician,

Dr. James Coleman, establish any necessary work restrictions

for Martin. Coleman gave Shaw's a list of physical

restrictions and indicated that Martin could return to work

if these restrictions were respected. Shaw's then asked

Martin to see a second doctor. Based on the second

examination, Shaw's offered Martin four weeks of modified

duty, to be followed by return to her former position without

restrictions.

Martin did not return to work. Instead, through her

attorney, she again asked for a position fitting the

restrictions set by Coleman. Shaw's responded by again

offering Martin her former position with no restrictions.

When discussion failed to resolve the matter, Shaw's sent

Martin a letter in September 1995 informing her that she was

-2- -2-

terminated. The letter referred to Shaw's "policy and

contract language concerning extended periods of absence."

On October 19, 1995, Martin reapplied for full-time

employment with Shaw's, requesting a position with duties

modified as Coleman had recommended. Shaw's did not respond.

Later in the month, Martin's union filed a grievance on her

behalf under its collective bargaining agreement with Shaw's,

alleging that Martin had been unjustly terminated and

requesting her reinstatement with reasonable accommodations.

Three months later, Martin filed the present action in

Massachusetts state court, claiming that Shaw's had violated

Mass. Gen. Laws ch. 152, 75A, 75B(2), by failing to rehire

her. These sections provide, respectively, that an employee

who lost her job as a result of compensable injury must be

given rehiring preference by the former employer over non-

employee applicants, id. 75A, and that no employer may 

refuse to hire an employee because she asserted a workers'

compensation claim, id. 75B(2). Martin's suit did not 

contest Shaw's right to discharge her in the first instance.

In March 1996, Shaw's removed the action to federal

court, premising jurisdiction under 28 U.S.C. 1331, and

moved to dismiss, Fed. R. Civ. P. 12(b)(6). The district

court granted Shaw's motion, agreeing that Martin's claims

were preempted by section 301 of the Labor Management

Relations Act, 29 U.S.C. 185. Martin now appeals this

-3- -3-

ruling. The sole issue on appeal is whether section 301

preempts Martin's state-law claims.1 

Section 301 modestly provides only that "[s]uits for

violation of contracts between an employer and a labor

organization representing employees . . . may be brought in

any district court of the United States having jurisdiction

of the parties . . . ." 29 U.S.C. 185. But jurisdiction

begat substantive authority. In Textile Workers v. Lincoln 

Mills, 353 U.S. 448, 451 (1957), the Supreme Court ruled that 

this section "authorizes federal courts to fashion a body of

federal law for the enforcement of . . . collective

bargaining agreements."

In turn, substantive authority gave rise to preemption.

In Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962), the 

Supreme Court held that state law is displaced when courts

are "called upon to enforce" collective bargaining

agreements, because those agreements should be governed by

federal doctrine, rather than varying state contract-law

principles. Then, two decades later, the Supreme Court said

that "the pre-emptive effect of 301 must extend beyond

[state-law] suits alleging contract violations." Allis- 

Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). 

 

1The asserted jurisdictional basis for removal--
preemption--might appear to offend the well-pleaded complaint
rule, but where section 301 preemption is concerned, the
Supreme Court has held that removal is proper. Caterpillar 
Inc. v. Williams, 482 U.S. 386, 393-94 (1987). 

-4- -4-

Just how far beyond has never been precisely settled.

Allis-Chalmers preempted a state-law tort claim closely 

relating to the handling of a labor-agreement grievance.

Shortly thereafter the Court declared that state-law claims--

seemingly of whatever character--are preempted if they

"require construing the collective-bargaining agreement."

Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 

(1988). Yet recently, the Supreme Court cautioned that

section 301 "cannot be read broadly to pre-empt nonnegotiable

rights conferred on individual employees as a matter of state

law." Livadas v. Bradshaw, 114 S. Ct. 2068, 2078 (1994). 

Nevertheless, Livadas repeated the basic test laid down 

by Lingle--namely, that section 301 preempts a state-law 

claim wherever a court, in passing upon the asserted state-

law claim, would be required to interpret a plausibly

disputed provision of the collective bargaining agreement.

Id. At first blush, this might seem a puzzling test: both 

state and federal courts have authority to enforce collective

bargaining agreements, and so to interpret their provisions.

See Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 506 

(1962).

The explanation lies in the Supreme Court's concern to

enforce arbitration clauses, almost always a feature of labor

contracts. If judges construed labor agreements in the first

instance, the Court believed that the arbitration process

-5- -5-

would be undermined, and there might be divergent readings of

the labor agreement and interference with the grievance

process itself. Livadas, 114 S. Ct. at 2078; Allis-Chalmers, 

471 U.S. at 219. Such an arbitration clause is present in 

this case.

We thus begin by asking, as we have done in the past,

e.g., Quesnel v. Prudential Ins. Co., 66 F.3d 8, 10-11 (1st 

Cir. 1995), whether resolution of Martin's claims would

require an interpretation of the collective bargaining

agreement. Our premise is that this means a real 

interpretive dispute and not merely a pretended dispute.

Indeed, the Supreme Court has said that the need merely to

refer in passing to the agreement will not necessarily

preempt. Livadas, 114 S. Ct. at 2078. 

Martin has alleged violations of Mass. Gen. Laws ch.

152, 75A, 75B(2). Section 75A creates a priority for

rehiring:

Any person who has lost a job as a result of an
injury compensable under this chapter shall be
given preference in hiring by the employer for whom
he worked at the time of compensable injury over
any persons not at the time of application for
reemployment employed by such employer; provided,
however, that a suitable job is available.

The relevant portion of section 75B(2)--a conventional

prohibition against retaliation--states that "[n]o employer .

. . shall . . . refuse to hire or in any other manner

discriminate against an employee because the employee has

-6- -6-

exercised a right afforded by this [workers compensation]

chapter." 

If the statutes stopped here, this might be a different

case. But both statutory sections also contain a proviso

that "[i]n the event any right set forth in this section is

inconsistent with an applicable collective bargaining

agreement," the agreement shall prevail. Id. 75A, 75B(3). 

Shaw's argues that both of Martin's statutory claims are

inconsistent with the labor agreement; that resolution of

this "inconsistency" charge requires interpretation of the

agreement; and that the claims are therefore preempted under

the Supreme Court's own rubric.

It is very doubtful whether, without this last-quoted

proviso, Shaw's would have any plausible claim of federal

preemption. Massachusetts has an independent interest in

regulating injury compensation; and apart from the proviso,

the elements of both Martin's state-law claims appear to be

independent of bargaining agreement provisions. There are

other types of labor preemption, apart from Lingle's "require 

construing" test,2 but Shaw's does not argue that Martin's

state claims would be preempted absent the proviso.

 

2Broadly speaking, most cases of preemption in the labor
field involve conflict, or potential conflict, between state
law and federal labor policy. But sometimes the conflict
arises out of some source other than the need to interpret a
labor agreement. E.g., Livadas; San Diego Bldg. Trades 
Council v. Garmon, 359 U.S. 236 (1959). 

-7- -7-

Rather, Shaw's argues that Massachusetts has as a matter

of state law chosen to make the substantive rights conferred 

by the statutes depend upon their not being "inconsistent"

with a labor agreement. This court endorsed just such a

reading of the proviso of section 75B, which is identical in

substance to the provision of section 75A, in Magerer v. John 

Sexton & Co., 912 F.2d 525, 529-30 (1st Cir. 1990). And 

Magerer merely holds Massachusetts to the literal wording of 

its own statute.

The question remains whether Shaw's labor agreement is

colorably inconsistent with Martin's state-law claims.

Shaw's best argument rests upon the agreement's "management

rights" clause, which states that Shaw's has the "sole right

to manage its business including . . . the right[] . . . to

hire, assign and promote Employees." Shaw's says that Martin

is a former employee seeking to be rehired, that the

agreement regulates this subject (but not in a way that

protects Martin in this case), and that in all other respects

the union has agreed to management's right to choose which

former employees to rehire.

Martin responds that the "management rights" clause

cannot be inconsistent with her state-law claims in this case

because she is no longer covered by the agreement. Yet the

agreement does give former Shaw's employees some specific

priority rights to be rehired. See Collective Bargaining 

-8- -8-

Agreement Art. 12(B) ("Full-time employees laid off because

of lack of work when no other full-time work is available

shall be offered part-time work [if available] . . . .").

And the "management rights" clause by its terms embraces

decisions as to hiring.

Martin next says that Shaw's employee handbook

guarantees to her the very right to priority in rehiring

established by section 75A. The handbook does contain

language that is fairly close to the rehiring priority

contained in section 75A, suggesting that Shaw's itself

treats this priority right (although not necessarily the

protection against retaliation) as consistent with its

"management rights" clause. But for purposes of construing

the "management rights" clause, the handbook is at best a

gloss. 

Whether the handbook does constitute a gloss and, if so,

what weight it should be given are issues of interpreting the

collective bargaining agreement. The handbook may well

weaken Shaw's reliance on the "management rights" clause; but

the handbook may simply be a reference to state law, whose

application Shaw's has now rethought in the face of

litigation. To entertain Martin's state-law claims would

still require a court to interpret the agreement, which is

precisely what Supreme Court precedents forbid.

Accord Magerer, 912 F.2d at 530. 

-9- -9-

Martin next asserts that any waiver of statutory rights

by a union and management in a collective bargaining

agreement must be "clear and unmistakable." See Livadas, 114 

S. Ct. at 2079 (citations omitted). But Shaw's preemption

claim does not depend upon a "waiver" of statutory

protections; indeed, it is unclear under Massachusetts law

that the statutory protections can be "waived." Cf. Mass. 

Gen. Laws ch. 152, 75B(3) (limiting waiver). Rather, the

statutes themselves expressly withhold protection where it

would be "inconsistent" with labor agreements, without

requiring the inconsistency to be "clear and unmistakable."

We conclude that under Supreme Court and First Circuit

precedent, Martin's state law claims are preempted. This is

not because the collective bargaining agreement is 

inconsistent with the state claims asserted, but because it

may be so and requires interpretation. We could ourselves 

remove the doubt by interpreting the agreement one way or the

other, but this course has been foreclosed in deference to

the arbitration clause. As all of this appears to follow

logically, the question remains why the outcome may seem

faintly troubling.

One reason is that Massachusetts' statutory proviso,

making the rights conferred yield to inconsistent labor

agreements, may be producing some results that the

legislature did not intend. When the statutes were enacted

-10- -10-

in December 1985, Massachusetts might have thought that the

proviso was necessary to avoid preemption; the legislature 

might be chagrined to discover that the proviso has

unnecessarily curtailed workers' rights. But this is at best

a debatable inference,3 and we have found no helpful

legislative history. 

Possibly, the proviso could be construed to require more

than mere inconsistency. Or a state court could hold that

the rights conferred yield only to highly specific provisions

in a labor agreement and not to a generic "management rights"

clause. But both readings would ignore the explicit language

of the proviso. Perhaps the state did intend to defer to the

labor agreement even where it assisted the employer. Despite

the clear warning sent by Magerer in 1990, Massachusetts has 

not chosen to amend the statutes.

The other reason why the outcome may seem troubling is

that it could result in Martin having no claim at all against

Shaw's, even for retaliation. This charge is, of course,

merely an allegation; but even if it proved to have

substance, it would be preempted because of the collective

 

3Shortly before the legislature acted in 1985, the
Supreme Court made clear that section 301 does not "give the
substantive provisions of private agreements the force of
federal law, ousting any inconsistent state regulation."
Allis-Chalmers, 471 U.S. at 212. See also Metropolitan Life 
Ins. Co. v. Massachusetts, 471 U.S. 724, 755-56 (1985) 
(holding that state mandated-benefits laws were not generally
preempted).

-11- -11-

bargaining agreement, and yet the agreement may itself

provide no remedy. Preemption sometimes does result in a

complete denial of remedies for obvious wrong, e.g., Smith v. 

Dunham-Busch, Inc., 959 F.2d 6, 11 (2d Cir. 1992), but this 

is not a result one eagerly embraces. 

Various possibilities may cushion this outcome. If the

employee handbook is a gloss on the collective bargaining 

agreement, perhaps the language already mentioned may not

only defeat the "management rights" defense but also give

rise to affirmative obligations on the part of the employer

enforceable through arbitration. Or, perhaps arbitration

would yield a definitive ruling that the "management rights"

clause, and any other clause relied upon by Shaw's, is not

"inconsistent" with the rights contingently secured by the

statutes. 

If all else fails, the union is free to negotiate

language that eliminates this issue the next time it renews

its labor agreement. The parties entered the current

agreement in 1994, well after Magerer was decided, but the 

absence of such language in the present agreement may be an

oversight. All that it would take to prevent preemption is

an explicit provision stating that nothing in the agreement

is intended to create management rights inconsistent with any

workers' rights under sections 75A and 75B.

-12- -12-

Finally, in a reply brief, Martin and her union (which

appears as an amicus and has ably supported Martin) offer a

preemption claim of their own. They say that a discharged

non-union worker could invoke the Massachusetts statutes and

that by allowing the collective bargaining agreement to

extinguish Martin's rights, the Massachusetts proviso

discriminates against members or former members of unions,

thereby offending federal labor policy. This, they say,

Livadas itself forbids. 

Livadas struck down a state administrative practice 

because it effectively discriminated against union members as

compared with non-members, 114 S. Ct. at 2074-75, a

preemption theory that has nothing to do with section 301.

On the reasoning of Livadas, Massachusetts arguably could not 

provide that a rehiring priority, or a claim against

retaliation, would be made available only to workers who were

not members of a union. But here Massachusetts has done

nothing of the kind.

Instead, the proviso in question permits the union on

behalf of its members to craft its own regime (the agreement)

and in it, either to preserve or displace another regime

(specified provisions of state law). Viewed in the large,

there is no discrimination whatever against union members;

Massachusetts simply allows the union to negotiate for a

-13- -13-

different package of benefits. Next time, as we have noted,

the union is free to bargain differently.

Affirmed. 

-14- -14-