Haggerty", J.
The plaintiff, Joseph Azzolino (“the plaintiff or “Azzolino”) brought this action against his former employer, Woodlawn Cemetery (“the Cemetery”) and Local 1285 (“the Union”). The Union represents seasonal landscape and greenhouse employees. In his first count against the Cemetery, Azzolino charges it engaged in handicap discrimination when the Cemetery failed to rehire him in violation of G.L.c. 152, §75B. In his second count against the Union, Azzolino claims the Union intentionally interfered with his contractual relations with the Cemetery. Both defendants have moved for summary judgment. For the reasons which follow, summary judgment is ALLOWED.

BACKGROUND

The following facts are undisputed. The plaintiffs employment relationship with the Cemetery and the Union began in 1990 when he was hired as a seasonal laborer.[1] The collective bargaining agreement that governed the relationship of the Cemetery, its employees and the Union required the plaintiff to become a member of the Union, and remain in good standing with the Union.[2] Azzolino did remain in good standing with the Union until he was injured on November 28, 1997. At that time Azzolino stopped paying his dues.[3] He contemporaneously sought workers’ compensation benefits pursuant to G.L.c. 152.
The Union sought payment of its dues. In May of 1998 Henry Thibault (“Thibault”) the union treasurer approached the union Vice-President and Shop Steward George Milley (“Milley”) and inquired about Azzolino. Milley told Thibault that Azzolino did not intend to return to work or pay his dues because he was going to get a workers’ compensation settlement from the Cemetery. By letter dated July 7, 1998, the Union notified Azzolino that he was not in good standing due to non-payment of dues and that he was suspended.[4] The Union simultaneously notified the Cemetery of Azzolino’s suspension. By a letter dated July 29, 1998, the Union requested that the Cemetery terminate Azzolino pursuant to the Union Security Clause.
In March of2000, Azzolino sought to return to work. The Cemetery, through Mr. Inman (“Inman”) the director of operations, informed Azzolino he would have to repay his union dues before he would be able to return to work at the Cemetery.
Azzolino again sought to return to work in March of 2001, after achieving good-standing by paying the delinquent dues. The Cemetery arranged for Azzolino to have a physical by a physician of its choosing. Azzolino returned the results of his physical to the Cemetery, and Milley told him to report to work the following Monday, March 26, 2001. On Monday, Azzolino went to the Cemetery, completed some forms and presented Milley with a form from his personal physician that restricted his work. Milley told Azzolino there was no work for him.

DISCUSSION

The defendant is entitled to summary judgment if the defendant “demonstrates by reference to the material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the [plaintiff] has no reasonable expectation of proving an essential element” of his case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). All facts and inferences are taken in the light most favorable to the nonmoving party. See Harrison v. NetCentric, 433 Mass. 465 (2001). Facts in dispute will not necessarily preclude summary judgment; the facts must be material to the issues raised by the claim. Hudson v. Commissioner of Correction, 431 Mass. 1, 5 (2000). “The meaning of a word or phrase used in a statute is a question of law, and is to be determined by the ordinary principles of statutory construction.” Gross v. Prudential Insurance Company of America, 48 Mass.App.Ct. 115, 118-19 (1999).
A. THE UNION’S MOTION FOR SUMMARY JUDGMENT
In Count Two of his complaint, the plaintiff claims the Union intentionally interfered with his contractual relationship with the Cemetery. In its motion, the Union asserts that suspending Azzolino, notifying the Cemetery of the suspension and requesting the Cemetery terminate Azzolino’s employment were actions authorized by the collective bargaining agreement and the National Labor Relations Act (“the NLRA”). In support of its argument, the Union claims the NLRA and the Labor Management Relations Act (“the LMRA”) preempt Azzolino’s intentional interference with contractual relations claim as it is based on the enforcement of a union security clause or collective bargaining agreement. Under preemption, once this Court applies federal law it is stripped of its jurisdiction over the subject matter of this claim because the NLRA requires disputes to be submitted to the National Labor Relations Board (“the NLRB”). Alternatively, the Union argues Azzolino has not met his burden to withstand a summary judgment challenge to the claim of intentional interference with a contractual relationship.
*74 Azzolino counters that the Union never collected dues from employees out of work on workers’ compensation. Therefore, he argues, the Union waived its right to collect union dues from him while he was out of work on workers’ compensation. Following this analytical path, the actions of the Union under the collective bargaining agreement were not authorized, and amounted to the common-law tort of intentional interference with contractual relations between the Cemetery and him. He argues subject matter jurisdiction exists over this claim because it does not require interpretation and application of the NLRA, nor is it substantially based in a collective bargaining agreement triggering the application of §301 of the LMRA and the federal common law.
1. Preemption by the National Labor Relations Act (NLRA)
The Union argues that Azzolino’s intentional interference with contractual relations claim is preempted by federal law because its actions were arguably protected by the National Labor Relations Act (“the Act”). The plaintiff argues that intentional interference with contractual relations is a state law based claim that does not require reference to the NLRA.
A claim triggers the application of the preemption doctrine when it falls within the scope of an area Congress has manifested its intent to control. “In the area of labor law Congress’ intent could not be clearer: there is not only a general intent to preempt the field but also [the] inescapable implication of exclusiveness.” Goulet v. Carpenters Dist. Council of Boston and Vicinity, 884 F.Sup. 17, 21 (D.Mass. 1994), citing Guss v. Utah Labor Relations Board, 353 U.S. 1, 10 (1957).
Pertinent to this inquiry is whether Azzolino’s proof of intentional interference with contractual relations relies on union conduct that is protected or prohibited by §7 or §8 of the Act. Section 7 of the Act, 29 U.S.C. §157, sets out rights of employees:
Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in §8(a) (3) [29 USCS § 158(a) (3)].
In Amalgamated Ass’n of Street Elec. Ry. and Motor Coach Employees of America v. Lockridge, 403 U.S. 274 (1970), the Supreme Court reversed the Idaho Supreme Court and held the NLRB had exclusive jurisdiction for a breach of contract claim brought by Lockridge against his union in state court. The claim arose when the union sought to enforce a security clause in the collective bargaining agreement. It notified Greyhound, Lockridge’s employer, pursuant to that agreement to terminate Lockridge’s employment because he failed to pay his member dues. Lockridge alleged the union’s notice was premature and in breach of the agreement. In concluding that the matter was within the exclusive jurisdiction of the NLRB, the Court reasoned, “Preemption ... is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern.” Amalgamated Ass’n of Street Elec. Ry. and Motor Coach Employees of America v. Lockridge, supra, at 292.
Here, in order to meet the elements of intentional interference of contractual relations, Azzolino will have to show the Union’s interference was intentional and improper in motive and means. Under the provisions of the Act set out above, it is undisputed that the Union’s conduct was proper in both motive (seeking union dues) and means (pursuant to the Union Security Clause). Thus, the claim comes within the provisions of the Act, and therefore jurisdiction over the matter is reserved to the NLRB.
2. Preemption by the Labor Management Relations Act (LMRA)
“State claims by union members are also preempted by §301 of the LMRA, 29 USCS §185, where their resolution requires the interpretation of a collective bargaining agreement or where the conduct complained of is undertaken ‘pursuant to’ a collective bargaining agreement.”
This section grants rights to employee-union members but reserves the right to make membership in the union a condition of employment.
Section 8 of the Act, 29 U.S.C. §158 describes conduct that constitutes unfair labor practices. Subsection (a)(3) reads:
It shall be an unfair labor practice for an employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this Act, or any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by an action defined in §8(a) of this Act as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later...
This section expressly permits employers to enter into union security agreements with unions, and to make membership in the union a condition of employment. Subsection (b)(2) of the same section reads:
It shall be an unfair labor practice for a labor organization or its agents to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an *75 employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.
This section of the NLRA carves out an exception to discrimination of employees on the basis of union membership, and permits a union to entangle itself in the employment relation of a member when a member fails to pay his dues. These sections cover the conduct complained of by Azzolino and thus, state action is preempted by the NLRA. Goulet v. Carpenters Dist. Council of Boston and Vicinity, 884 F.Sup. 17 (D.Mass. 1994). “Where such preemption is applicable, ‘federal labor-law principles — necessarily uniform throughout the nation — must be employed to resolve the dispute.’ ” Magerer v. John Sexton & Co. et al., 912 F.2d 525, 528 (1st Cir. 1990) (claim for intentional interference with contract held preempted). Thus, if Azzolino’s claim against the Union for intentional interference with contractual relations requires an interpretation of the collective bargaining agreement, §301 preempts his state law claim, and federal law applies. Id.
Here, in order to determine whether the Union intentionally interfered with Azzolino’s contractual relationship with the Cemeteiy, the Court must determine whether the Union was without any right to interfere under the collective bargaining agreement. The plaintiff has advanced a waiver argument, i.e., a waiver of the right to enforce the Union Security Clause by past custom and practice of the Union.[5] In order to understand what rights the Union may have relinquished it is necessary to define the Union’s right and its scope. The plaintiffs argument necessarily requires the court to interpret the collective bargaining agreement. Thus, Azzolino’s claim against the Cemetery is governed by the collective bargaining[6] agreement and thus, preempted by the LMRA.
B. THE CEMETERY'S MOTION FOR SUMMARY JUDGMENT
At the heart of the plaintiffs claim against the Cemetery is whether the Cemetery terminated him on March 26, 2001 despite the fact that, as Azzolino claims, he was capable of performing the essential functions of his job with reasonable accommodation. The plaintiff claims that G.L.c. 152, §§75B(1) and (2) provide him with a remedy for employment discrimination on the basis of a handicap, independent of G.L.c. 151B. The Cemetery argues that G.L.c. 151Bis the Azzolino’s exclusive remedy. In either case, the Cemetery is entitled to judgment as a matter of law.
If G.L.c. 15 IB is the exclusive remedy for Azzolino, then his claim fails because it is undisputed that he has failed to file a complaint with the Massachusetts Commission against Discrimination within the six-month statutory time frame. G.L.c. 15 IB, §5. I note that G.L.c. 15 IB is the exclusive remedy for handicap discrimination. G.L.c. 15IB, §§4 and 9. See Green v. Wyman Gordon Co., 422 Mass. 551, 554-58 (1996). G.L.c. 152, §75B(1) further provides as follows:
Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.
G.L.c. 152, §75B(1). That Section 75B(1) entities an employee protected by G.L.c. 152 to the benefits of G.L.c. 15IB does not alter the exclusivity provision of G.L.c. 151B, §4. Presumably this subsection was added to make clear that the exclusivity provisions of G.L.c. 152, §24 do not apply to discrimination cases encompassed by G.L.c. 151B. Subsection (2) of G.L.c. 152, §75B provides in part as follows:
(2) No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised aright afforded by this chapter, or who has testified or in any manner cooperated with an inquiiy or proceeding pursuant to this chapter, unless the employee knowingly participated in a fraudulent proceeding. Any person claiming to be aggrieved by a violation of this section may initiate proceedings in the superior court department of the trial court for the county in which the alleged violation occurred. An employer found to have violated this paragraph shall be exclusively liable to pay to the employee lost wages, shall grant the employee suitable employment, and shall reimburse such reasonable attorney fees incurred in the protection of rights granted as shall be determined by the court. The court may grant whatever equitable relief it deems necessary to protect rights granted by this section.
This provision likewise does not alter the exclusivity provision of G.L.c. 151B, §4. The plaintiff fails to acknowledge that this provision provides a remedy to any employee who suffers discrimination because he has exercised any one of the numerous rights available to employees through G.L.c. 152. It does not include a remedy for discrimination based upon a handicap covered by G.L.c. 151B.
Even if G.L.c. 152, §75B provides an alternative remedy to Azzolino for employment discrimination on the basis of a handicap, subsection (3) necessarily captures the collective bargaining agreement in the analysis. G.L.c. 152, §75B(3) provides in part; “In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail.”
The pertinent clause of the collective bargaining agreement provides in Article XVIII as follows:
*76 18.0Any employee who is unable to fully perform his regular duties due to an occupational injury may be assigned such light duties in the Cemeteiy that have been previously discussed by the Ceme-teiy and the Union provided that such light duties:
1. Are consistent with the employee’s physical condition; and
2. Have been approved by a physician selected by the Cemeteiy; and
3. Have been approved by the employee’s own personal physician; or
4. Are approved by a third impartial physician who is selected by agreement of the Cemeteiy’s physician and the employee’s physician if they disagree.
An employee who returns to a light duty assignment under this Section shall be:
1. Eligible for all contractual rights and benefits.
2. Permitted such time off as may be necessary for doctor’s appointments or physical or similar therapy treatment to assist in his recoveiy.
In essence, G.L.c. 151B (to which there is access through G.L.c. 152, §75B(1)) requires reasonable accommodation to an injured employee who is capable of performing the essential functions of his job. The collective bargaining agreement has no such provision but permits the employer to assign “light” duty when certain conditions are met. Thus, there is an inconsistency and the plaintiffs claimed remedy under the statute would revert to the collective bargaining agreement even if there is an independent remedy in G.L.c. 152, §75B. See Magerer v. John Sexton & Co., 912 F.2d 525, 529-30 (1st Cir. 1990). Further support and guidance for this conclusion is found in a more recent decision of First Circuit Court of Appeals addressing the issue of “inconsistency” between a Section 75B right and a collective bargaining agreement.
In Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40 (1st Cir. 1997), a groceiy store employee sued her employer when it refused to rehire her and make reasonable accommodations for her disability. She filed suit in Superior Court alleging violations of G.L.c. 152, §§75A, and 75B(2). The suit was removed to Federal court pursuant to 28 U.S.C. §1331, because it raised a federal question under §301 of the LMRA. On appeal, the employee disputed whether the claim was preempted under §301. In resolving this issue the First Circuit asked first whether the claim would require interpretation of the collective bargaining agreement. Id. at 42. It determined that subsection (3) of §75B would require the court to interpret the collective bargaining agreement. Id. at 42-43. The Court then looked to whether the employer’s labor agreement is colorably inconsistent with the employee’s state law claims. Id. at 43-44. In that case, the management rights clause raised a possible conflict with the operation of the proviso. Thus, the employee’s claim required interpretation of the collective bargaining agreement, and was therefore properly preempted under §301. Id. Thus as a matter of law, the G.L.c. 152, §75B affords Azzolino no independent remedy for his claim of discrimination on the basis of handicap. The Cemeteiy is entitled to judgment.

ORDER

Accordingly, it is ORDERED that Woodlawn Cemeteiy’s Motion for Summary Judgment on Count 1 is ALLOWED and Local 1285’s Motion for Summary Judgment on Count 2 is ALLOWED. Judgment shall enter accordingly.

 Mr. Azzolino worked 9 out of 12 months, and collected unemployment benefits for the remaining three months.

 The union membership requirement is found in Article II (“the Union Security Clause”) of the collective bargaining agreement. It reads:
2.0 The Cemeteiy agrees that as a condition of employment, all bargaining unit employees shall become members of the Union within thirty (30) days after being hired or thirty (30) days after the execution of this Agreement, or upon recall, whichever is later, and shall remain members of the Union so long as they are employed by the Cemeteiy during the term of this Agreement.
2.1 The CEMETERY agrees to deduct from the weekly wages of each employee who signs a written authorization card, UNION membership dues, initiation fees and assessments in such amount as may be designated by Local 1285. The deductions for such membership dues, initiation fees and assessments shall be transmitted to the Treasurer of Local 1285 on a weekly basis. Local 1285 shall provide the CEMETERY with at least fifteen (15) days advance notice of the amount of the dues, fees and assessments to be so deducted and of any subsequent change in any such amounts.
2.2 The Cemeteiy agrees that if an employee required to be a member of the Union ceases to be in good standing by reason of failure to pay required dues or initiation fees, such employees shall be discharged within fourteen (14) days after the Cemeteiy receives notice that the employee is not in good standing, unless the employee shall have been restored to good standing before the expiration of said (14) days. A copy of any notification sent by the Union to a member informing him that he is no longer in good standing in the Union, shall be simultaneously sent to the Cemeteiy.

 Article VIII §4 of Local 1285’s Constitution and By-Laws states: ‘The monthly dues are due on the first day of the month and unless paid on or before the last day of the following month, the member shall be deemed suspended by the International Union without notice.”

 Mr. Azzolino acknowledged receipt of the notice of his suspension during his deposition.

 I note that the undisputed evidence in support of the plaintiffs waiver agreement, viewed in the light most favorable to him, does not support “clear, decisive, and unequivocal conduct” indicating the Union’s relinquishment of its right to insist upon adherence to the Union Security Clause. Glynn v. City of Gloucester, 9 Mass.App.Ct. 454, 462 (1980). Although the issue of waiver is usually factual, where the facts are undisputed, as they are here, waiver is a question of law. McCarthy v. Tobin, 429 Mass. 84, 88 n.5 (1999).

 I note that there is no evidence that Azzolino attempted to resolve his dispute through the grievance procedure mandated by the collective bargaining agreement.