F. R. VANCE et al.

v.

Willard A. SPEAKMAN et al.

Supreme Judicial Court of Maine.

Dec. 31, 1979.

Gail S. Marshall (orally), Portland, for F. R. Vance.

Michael P. Asen (orally), Portland, for Goodwin, Brousseau and Rodrique.

Murray, Plumb & Murray, Clark C. Hambley, Jr. (orally), Ellyn C. Ballou, Portland, for defendants.

Peter B. Bickerman, Asst. Atty. Gen., Augusta, for Maine Human Rights Com'n, amicus curiae.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

The four plaintiffs, F. R. Vance, Michael Goodwin, Gare Brousseau, and Paul Rodrique, brought this action seeking to enjoin defendant Willard Speakman, their landlord, and his agents, including defendant Robert Nielsen, Jr., from evicting them from their apartment. Plaintiffs alleged that their eviction would violate 5 M.R.S.A. § 4582 (1979)[1] in that defendants were taking the eviction action "solely because" plaintiffs Vance and Goodwin were welfare recipients. The Superior Court granted plaintiffs' prayer for a permanent injunction but denied their request for attorneys' fees. On appeal, defendants contend that the Superior Court erroneously construed the word "solely." We agree and therefore sustain the appeal. We must, however, remand the case to the Superior Court for further factfinding necessary to the ultimate determination of defendants' motives in deciding to evict. Plaintiffs' cross-appeal from the Superior Court's refusal to award them attorneys' fees is denied.

I.

The four plaintiffs had been living in an apartment on Neal Street in Portland as tenants at will for over two years when defendant Speakman purchased the apartment building on January 15, 1979. In late January or early February, defendant Nielsen, the owner's managing agent, spoke with the tenants who lived in the apartment located above that of plaintiffs. They complained to Nielsen about the noise

---

1. The "fair housing" provisions of the Maine Human Rights Act include 5 M.R.S.A. § 4582, which provides in pertinent part:

    § 4582. Unlawful housing discrimination

    It shall be unlawful housing discrimination, in violation of this Act:

    .        .        .        .        .

    For any person furnishing rental premises to refuse to rent or impose different terms of tenancy to any individual who is a recipient of federal, state or local public assistance, including medical assistance and housing subsidies *solely because of such individual's status as such recipient.*
    (Emphasis added)

caused by plaintiffs' stereo and about a pile of paint cans and broken furniture in the basement belonging to plaintiff Vance. Nielsen did not tell plaintiffs of these complaints, nor did he ask them to correct the situation.

Plaintiffs' first rent payment to the new owner was due on February 1. On February 6 or 7, the agent Nielsen received two checks from plaintiffs Brousseau and Rodrique totaling one-half of the rent owed. Nielsen then spoke to plaintiff Goodwin, who said that his share of the rent would be paid by the city of Portland through its general assistance program. After speaking with a caseworker for the city's welfare department, Nielsen received a guarantee letter confirming that Goodwin's share of the rent would be paid later in the month by the city.

Plaintiff Vance's share of the rent was also unpaid. In January Vance had received public assistance because he had had a medical operation. For February, however, because he was no longer medically disabled, Vance could receive public assistance for his rent only if he had unsuccessfully searched for work throughout the month and had reported weekly his progress to his caseworker. Under the rules of the welfare department, a guarantee letter could not be issued until the end of the month; Nielsen learned of this situation between February 10 and 15 when he called Vance's caseworker.

Nielsen, however, did not wait to receive Vance's and Goodwin's rent payments from the city; on February 28, eviction notices were served on plaintiffs. Plaintiffs then brought the present injunctive proceeding. After hearing testimony the Superior Court ruled from the bench that Nielsen's decision to evict was prompted by the late payment of rent by Brousseau and Rodrique and by the complaints of plaintiffs' neighbors, as well as by the welfare status of Vance and Goodwin. Turning to the issue of constru-

ing the term "solely" in section 4582, the court said:

> [T]his Court is satisfied that if the Court were to find that there were more than one reason for any action taken  .  .  . the statute requires the Court to satisfy itself as a factual matter that the public assistance was a determinative factor in that but for the public assistance in issue the eviction would not have occurred, and that is the Court's construction of the statute.

The Superior Court concluded "that although the public assistance and the attendant circumstances was not independently the only reason, it was in fact the decisive reason, and without that no action would have been taken to evict these tenants." The court permanently enjoined defendants from seeking to evict "upon these grounds."

## II.

■ The issue on appeal is whether the Superior Court properly construed the statutory prohibition of rental discrimination "solely because of" welfare status. The last paragraph of 5 M.R.S.A. § 4582, the provision controlling this case, was enacted as an amendment to the Maine Human Rights Act by P.L.1975, ch. 151, § 1. When first proposed in the 1975 session, the last paragraph only prohibited the refusal to rent or the imposition of different terms of tenancy *because of* the individual's status as a recipient of public assistance.[2] The restricting adverb "solely" was added on the floor of the House during debate. *See* 1 Leg.Rec. B162 (March 13, 1975). Except for that last paragraph of 5 M.R.S.A. § 4582 (discrimination against welfare recipients) and 5 M.R.S.A. §§ 4595–96 (1979) (credit discrimination), all of the provisions of the Human Rights Act prohibit discrimination that is merely "because of"—not "solely because of"—factors such as age, race, or sex. Landlords and extenders of credit have gained from the legislature a more restrictive test than that prevailing for employ-

---

2.  We broadly construe the language of section 4582 regarding "refuse to rent or impose different terms of tenancy" to include the situation in the case at bar. An attempted eviction of

tenants at will is, in essence, a refusal to rent for the future. At oral argument, defendants agreed with this construction of the statute.

ment and other forms of prohibited discrimination.

■ It is impossible, in view of the statutory language and the legislative history, to give the word "solely" any meaning other than its straightforward dictionary definition:

> sole · ly (sōl'lē) *adv.* **1.** without another or others; alone [to be *solely* to blame] **2.** only, exclusively, merely, or altogether [to be read *solely* for pleasure]

*Webster's New World Dictionary, Second College Edition* (1976). As this court has repeatedly declared,

> An elementary rule of statutory construction is that words must be given their common meaning unless the act discloses a legislative intent otherwise.

*Hurricane Island Outward Bound v. Town of Vinalhaven,* Me., 372 A.2d 1043, 1046 (1977). Interpreting the last paragraph of 5 M.R.S.A. § 4582 by that standard leaves no doubt of its intended meaning: To be guilty of unlawful discrimination the landlord must have refused to rent "alone" or "exclusively" or "altogether" because of the tenant's welfare status.

The applicable statute, fact circumstances, and decision in *Wells v. Franklin Broadcasting Corp.,* Me., 403 A.2d 771 (1979), provide an instructive counterpoint to the case at bar. *Wells,* which was decided after the Superior Court decision in this case, had been brought pursuant to 5 M.R.S.A. § 4572 for employment discrimination "because of . . . age." In *Wells* we held that phrase to mean that age is *a determining* factor in the defendant's action. *Id.* at 773. *See also Maine Human Rights Comm'n v. City of·Auburn,* Me., 408 A.2d 1253, at p. 1268 (1979) (alleged discrimination "because of . . . sex"). Here, we are led necessarily to the conclusion, on the basis of *Wells* and the statutory addition of the word "solely," that the phrase "solely because of such individual's [welfare] status" means that such status is *the only determining* factor in the defendant's action.

Plaintiffs' counsel argue persuasively that the "solely" test imposes an unintendedly difficult burden of proof upon the welfare recipients meant to be protected by this remedial provision of the Human Rights Act. They would have this court construe the "solely" provision to set a standard of proof higher than "a determining factor" (the test of *Wells*) but less than "the only determining factor." They urge that "solely because of" welfare status requires merely that such status be "the primary" or "the predominant" factor. However mindful this court is of the difficulty in many situations of proving that welfare status was the sole reason for the landlord's refusal to rent, the legislature has left no room for the statutory construction urged by plaintiffs. The legislature said, "solely because of," and not "primarily because of." The legislature, and not this court, is the appropriate institution of government to make the change that plaintiffs now urge should be made in the statute.

Landlords, however, must be warned that the mere presence of other facially plausible factors for refusing to rent, such as complaints by other tenants, will not end the investigation whether unlawful discrimination against welfare recipients has in fact occurred. The question is always open whether those other factors pointed to by the landlord are genuine ones in that they in fact made a difference in his decision to evict, or whether they are used after the fact as mere pretext or coverup. *Cf. Maine Human Rights Comm'n v. City of Auburn, supra,* at pp. 1262, 1267–1268; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (in employment discrimination actions, the plaintiff may adduce evidence that the defendant's articulated nondiscriminatory reason is pretext, or the trial justice may reject that reason based on his assessment of the witnesses' credibility). Evidence of pretext as applied to this case might include the fact that no action, not even the transmittal of the other tenants' complaint to plaintiffs, was taken, nor any action taken or com-

plaint made regarding the late payment by plaintiffs not receiving public assistance.[3]

■ We must remand this case to the Superior Court because the justice made his decision, announced from the bench immediately at the end of the evidentiary hearing, prior to the issuance by this court of its opinions in *Wells* and *City of Auburn.* The Superior Court justice is entitled to reexamine the facts of the present case in light of the standards elucidated in this opinion.

■ If the Superior Court, on remand, should find that the inter-tenant complaints and the late payments by plaintiffs Brousseau and Rodrique were not among the factors that actually caused defendant Nielsen to reach his eviction decision, then the attempted eviction would be "solely because of" the other two tenants' welfare status. The Superior Court should then reissue its injunction.[4] If, on the other hand, the justice finds that the receipt of public assistance was not the only determining factor for defendants' decision, but that there were one or more other genuine, nondiscriminatory factors that also played a determining part, then the injunction requested by plaintiffs should not be issued. Those other factors must have made a difference in defendants' decision in the sense that but for their existence no eviction notice would have been served upon plaintiffs. *See Wells v. Franklin Broadcasting Corp., supra* at 773–74.

## III.

The Superior Court correctly refused to award plaintiffs their attorneys' fees because there is no statutory provision therefor under the Maine Human Rights Act.

■ The universal rule in the United States is that "absent statute or enforceable contract, litigants pay their own attorneys'

fees." *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). *See Thiboutot v. State,* Me., 405 A.2d 230, 238 (1979). Under these circumstances, a statutory right to recover attorneys' fees will be found only in the clearest kind of legislative language. The only support for award of such fees that plaintiffs can find in the Maine Human Rights Act is a negative implication they draw from the last sentence of 5 M.R.S.A. § 4622 (1979):

> If the plaintiff *fails* to allege and establish, to the satisfaction of the court, that he or she or someone acting on his or her behalf filed a complaint with the commission at least 30 days prior to the filing of his or her civil action, then except in extraordinary cases, to prevent irreparable injury or where good cause is shown, the action shall be heard in its ordinary course on the docket, and *the plaintiff should not be granted attorneys' fees nor exemplary damages.*

(Emphasis added). That sentence, however, only denies attorneys' fees and exemplary damages where plaintiffs fail to take certain procedural steps. What relief is affirmatively available must be found in the first sentence of section 4622:

> If the plaintiff alleges and establishes, to the satisfaction of the court, that he or she or someone acting on his or her behalf filed a complaint concerning the alleged unlawful discrimination with the commission at least 30 days prior to the filing of the civil action, the action may be advanced on the docket and given priority over other civil actions, and the plaintiff may, in the court's sound discretion, be entitled to *any of the relief provided for in this Act.*

3. In other situations where the landlord has been such for a longer period of time than here, the fact that no eviction action had ever been taken against a tenant because of late payment of rent or because of a single complaint by another tenant would also be evidence of pretext.

4. We note that the injunction here appealed from does not comply with M.R.Civ.P. 65(d), which requires the court to "set forth the reasons for" the issuance of an injunction. The purpose of the 65(d) requirement is to enable and appellate court to know exactly what findings of fact and rulings of law are being used to justify the injunction.

(Emphasis added). However, the Act is searched in vain for any explicit provision for attorneys' fees. 5 M.R.S.A. § 4613(2)(B) (1979) empowers the trial justice, once unlawful discrimination is found, to give judgment for "an appropriate remedy or remedies." Attorneys' fees are conspicuously absent from the seven possible remedies itemized in that subsection.

As we have noted elsewhere, the Maine legislature, in originally enacting the Human Rights Act in 1971 and amending the Act from 1971–75 by adding age, sex, and welfare status as protected factors, adopted antidiscrimination provisions that generally track their federal counterparts. *See Maine Human Rights Comm'n v. City of Auburn, supra,* at p. 1261; *Wells v. Franklin Broadcasting Corp., supra* at 773 n. 4; *Maine Human Rights Comm'n v. Local 1361,* Me., 383 A.2d 369, 375. Since 1964, Congress had explicitly provided for the discretionary granting of attorneys' fees in antidiscrimination actions. *See, e. g.,* 42 U.S.C. §§ 2000a–3(b), 2000e–5(k) (public accommodations and equal employment opportunity actions, 1964); 42 U.S.C. § 3612(c) ("fair housing" actions, 1968); 42 U.S.C. § 1988 (general civil rights actions, 1976).

Against the background of the firmly established common law rule denying the award of attorneys' fees and Maine's failure in this regard to follow the model of federal antidiscrimination laws, this court is unwilling to infer that the legislature meant such an award to be "an appropriate remedy." The legislature, if so minded, can readily add attorneys' fees to the "appropriate remedies" specified in section 4613(2)(B).

The entry must be:

Appeal sustained.

Judgment for plaintiffs vacated.

Case remanded for proceedings consistent with the opinion herein.

Cross-appeal denied.

Costs on appeal and cross-appeal allowed to defendants.

POMEROY, J., did not sit.