M. Maverene **FORREST**, Plaintiff,

v.

**STINSON SEAFOOD COMPANY,**
**Defendant.**

No. 96–199–P.–C.

United States District Court,
D. Maine.

Jan. 5, 1998.

Kim Matthews, Portland, ME, for Plaintiff.

Thomas C. Johnston, Glen L. Porter, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Defendant.

### AMENDED MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff brought this action against Stinson Seafood Company ("Stinson") alleging sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.* Plaintiff alleged that Stinson discriminated against her on the basis of her sex by conspiring to keep her from applying for or obtaining work on a fishing boat. By agreement of the parties, only the Title VII claim was submitted to the jury. On that claim, the jury found that Plaintiff's sex was a motivating factor in Stinson's decision not to select her for a position as a crew member for which she had applied. The jury also found that Stinson would have refused Plaintiff the position in any event because of factors unrelated to her sex, such as experience or skill.[1]

After trial, but before all claims were resolved, Chief Judge D. Brock Hornby issued an Order of Recusal under 28 U.S.C. § 455(b)(1). The case was reassigned, and the Court now has before it Plaintiff's claims for relief under the Maine Human Rights Act ("MHRA"), Title VII, and for attorney fees. After reading the trial transcript and reviewing the exhibits admitted at trial, all of the pleadings, and the briefs submitted by the parties on this issue, the Court makes the following conclusions regarding the rights and remedies of the parties.

## DISCUSSION

### A. Civil Penal Damages under the Maine Human Rights Act

The first issue raised by the parties is whether Plaintiff is entitled to civil penal damages under the MHRA. Plaintiff asserts that the evidence presented at trial supports a finding of mixed-motive discrimination by Stinson. Mixed-motive discrimination, Plaintiff argues, is recognized under the MHRA and should be analyzed in the same manner as her Title VII claim, thus entitling her to civil penal damages under the MHRA. 5 M.R.S.A. § 4613(2)(B)(7). Stinson, on the other hand, argues that neither Maine case law nor the MHRA itself recognizes mixed motive cases as a form of discrimination.

First, Defendant argues that Maine case law does not recognize mixed-motive discrimination. Stinson relies on *Finnemore v. Bangor Hydro–Electric Co.*, 645 A.2d 15 (Me. 1994), where the plaintiff resigned from his position with the defendant company, alleging religious harassment based on his co-workers sexually explicit comments. The Law Court stated that the "test for determining whether a comment is of a religious nature is whether it occurred *because of* an individual's religious beliefs or would not have occurred *but for* the individual's religion." *Id.* at 17. Maine law, Stinson argues, continues to employ a "but for" analysis for all discrimination claims. Applying this test to the instant facts, Stinson concludes that it did not violate the MHRA when it denied Plaintiff a job as a deckhand. That is, it cannot be said that "but for" her sex Plaintiff would have been given the job because her inadequate experience or lack of skill was also part of Stinson's decision not to hire her.

*Finnemore* is distinguishable and, therefore, of no assistance to the Court in determining whether Maine law recognizes a mixed-motive discrimination claim. Unlike this case, Finnemore resigned, creating a

---

1. The questions the jury answered affirmatively are as follows:
   1. Was M. Forrest's sex a motivating factor in Stinson Seafood's decision not to select her for an available position as a crew member for which she applied?

2. If her sex was a motivating factor in the decision, would Stinson Seafood nevertheless at that time have refused her the position in any event because of factors unrelated to her sex such as experience or skill?

factual situation where the employer took no adverse employment action. With no predicate employment action having been taken by the employer, *Finnemore* does not fall into the category of cases from which a claim of mixed-motive discrimination arises. Therefore, the "because of" and "but for" methods of analysis discussed in *Finnemore* do not enlighten the Court as to what method of analysis the Law Court would use if faced with a true mixed-motive case. Moreover, this Court's research is unable to find a mixed-motive fact pattern in Maine case law.

Next, Stinson compares the Maine and the federal antidiscrimination statutes. In doing so, it highlights three differences between the statutory schemes to support its claim that Maine does not recognize mixed-motive discrimination. First, Stinson asserts that the Maine Legislature intentionally did not adopt the 1991 amendments to the Civil Rights Act relating to mixed-motive discrimination—42 U.S.C. §§ 2000e–2(m) and 2000e–5(g)(2)(B)—and, therefore, Maine law does not recognize mixed-motive discrimination. In addition, Stinson relies on the 1997 amendments to the MHRA which, like the 1991 amendments to the Civil Rights Act, provide for recovery of compensatory and punitive damages in instances of intentional discrimination. 5 M.R.S.A. § 4613(B)(8), P.L.1997, ch. 400 § 1 (effective September 19, 1997). The legislative statement accompanying this amendment provides:

> This bill makes the remedies available in proven cases of unlawful discrimination under the Maine Human Rights Act the same as those now available under the Federal Civil Rights Act of 1991, the Americans with Disabilities Act of 1990 and the Fed-

eral Fair Housing Amendments Act of 1988.

L.D. 1713 (118th Legis.1997). The final difference between the MHRA and Title VII noted by Stinson is that the MHRA does not provide plaintiffs the right to a jury trial. These instances, one of legislative action to bring the MHRA into alignment with Title VII, and two of legislative inaction, Stinson suggests, illustrate that Maine law does not always follow Title VII in "lock step fashion." [2] Post–Verdict Brief of Defendant Stinson Seafood Co., L.P. (Docket No. 54) at 10.

The Court is aware that there are significant organizational differences between the MHRA and the federal employment discrimination statutes.[3] Despite the absence of mirror image statutory provisions, Plaintiff insists that, Maine courts look to federal precedent when interpreting MHRA claims involving employment discrimination and urges the Court to do so here. The Law Court has consistently looked to federal law for guidance, but that guidance is limited to situations where "federal courts [are] interpreting ... federal *statutory equivalents*" to the MHRA. *Maine Human Rights Commission v. Local 1361*, 383 A.2d 369, 375 (Me.1978)(emphasis added); *see also Maine Human Rights Commission v. Maine Dept. of Defense and Veterans' Services*, 627 A.2d 1005, 1007 (Me.1993)(Maine statutory provision challenged similar to provision in federal law); *Bowen v. Dept. of Human Services*, 606 A.2d 1051, 1053 (Me.1992)("[U]se of federal precedent as an aid in interpreting Maine's antidiscrimination provisions is appropriate."); *Plourde v. Scott Paper Co.*, 552 A.2d 1257, 1262 (Me.1989) ("In the field of

---

**2.** To further support its argument that Maine law diverges from federal law, Defendant relies on the Maine Legislature's attempt to amend the MHRA to include the prohibition against discrimination on the basis of sexual orientation. P.L.1997, ch. 205. Although the Court recognizes the Maine Legislature's attempt to supplement Maine law to provide more protection to Maine citizens than that afforded under federal law, those provisions have not, to date, become effective. The Maine Legislature's initiative in the area of sexual orientation, however, does generally support Defendant's proclamation that the MHRA does not follow its federal counterpart in lock step fashion.

**3.** Maine law, unlike Federal law, does not provide a separate and distinct statutory scheme for discrimination based on age or disability. The Maine Human Rights Act makes it unlawful to discriminate in employment because of an individual's "race or color, sex, physical or mental handicap, religion, ancestry or national origin[,] or age." 5 M.R.S.A. § 4572. Federal law, by contrast, uses three separate statutory schemes— Title VII, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*—to denounce the unlawfulness of such discrimination.

employment discrimination we frequently adopt the analysis of analogous federal law by federal courts to the extent we find it persuasive."); *Percy v. Allen,* 449 A.2d 337, 342 (Me.1982) ("To the extent there exists an identity of purpose and objectives as between the Maine and federal [antidiscrimination] provisions, reference to the latter in construing the former is entirely appropriate."); *Maine Human Rights Commission v. City of Auburn,* 425 A.2d 990, 999 (Me.1981) ("The equity court in formulating relief for unlawful discrimination under the Maine Act can well be guided by those federal and common law parallels."); *Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1261 (Me.1979) ("The Maine legislature ... intended the courts to look to federal case law to 'provide significant guidance in the construction of [the Maine] statute.'" (quoting *Local 1361,* 383 A.2d at 375)). For the provision at issue in this case, there is no equivalent statutory provision under Maine law.

In *Vance v. Speakman,* 409 A.2d 1307 (Me. 1979), the Law Court was presented with circumstances similar to this situation, *i.e.,* the Maine Legislature had not acted to incorporate in the MHRA statutory scheme the attorneys' fees provision available under federal law. The *Vance* court first recognized the well-established common law rule that "'absent statute or enforceable contract, litigants pay their own attorneys' fees,'" *id.* at 1311 (quoting *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)), and then noted the Maine legislature's failure to follow federal law, before concluding that attorneys' fees were not available under the Maine statute. *Id.* at 1312. In articulating its reasoning, the court stated that it was "unwilling to infer that the legislature meant such an award to be 'an appropriate remedy.' The legislature, if so minded, can readily add attorneys' fees to the 'appropriate remedies'" specified in the statute. *Id.*

The Court agrees with those conclusions as applied to this case. The Maine Legislature, certainly aware of the changes in federal law, could have enacted provisions relating to mixed-motive discrimination. For six years the Legislature has chosen not to act. The Court concludes that despite the 1991 amendments to the Civil Rights Act incorporating mixed-motive discrimination into federal law, Maine does not recognize this type of discrimination claim. Accordingly, no remedy is available to Plaintiff under the civil penal damage provision of the MHRA.

## B. Discretionary Relief under Title VII

■ The jury found that Plaintiff's sex was a motivating factor in Stinson's decision not to offer her a position on one of its boats. The jury also found that Stinson would not have offered Plaintiff the job in any event because she lacked the requisite skill or experience to perform the job. This mixed-motive discrimination finding allows the Court to order the following relief:

(B) On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e–5(g)(2)(B). The purpose of this section is to allow courts, in cases where discriminatory motive has been found but damages cannot be ordered, to require the defendant to follow the law and not illegally discriminate.

### 1. Declaratory Relief

A thorough review of the record in this case, in conjunction with the jury finding, convinces the Court that Stinson discriminated against Plaintiff. Therefore, the Court will order Stinson to cease and desist its discriminatory conduct.

## 2. Attorney's Fees

■ Plaintiff requests that the Court order Defendant to pay her attorney fees and costs in this case. Unlike the existing attorney's fees provisions in the civil rights statutes, 42 U.S.C. § 2000e–5(k) or 42 U.S.C. § 1988(b), § 2000e–5(g)(2)(B) does not use or even refer to the term, "prevailing party." In 1991, Congress drafted this new provision so as to define the circumstances under which "an individual," as opposed to a "prevailing party," could recover. Those circumstances are that: (1) the individual proves a motivating factor for the adverse employment action was race, color, religion, sex or national origin, and (2) the employer proves the same adverse action would have been taken absent the impermissible motivating factor. Plaintiff is entitled, at the discretion of the Court, to have her attorney fees and costs which are "directly attributable" to the pursuit of her mixed-motive claim paid. 42 U.S.C. § 2000e–5(g)(2)(B)(i).

There are few cases which discuss this attorneys' fees provision. The Fourth Circuit is the only circuit court to address the issue. *See Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332 (4th Cir.1996). The *Sheppard* court considered the following factors relevant to a district court's determination of an appropriate award of attorneys' fees in a mixed-motive case: promotion of public purposes, how widespread the discrimination was, animus on the part of the defendant, misconduct, and any reasonable offer of settlement. *Id.* at 1336–37.

Plaintiff's stalwart position in pursuing this lawsuit has been of significant public service in opening an otherwise relatively closed career path to women. The Court finds that Plaintiff's persistence in seeking a position on a Stinson fishing boat and initiating this lawsuit was the primary force behind Stinson's decision to revise its arbitrary and discriminatory policies. There is not currently, and

has never been, a woman working on a Stinson fishing boat. The evidence showed that Stinson management, as well as a former fishing boat captain, agreed that there would never be a woman on a Stinson boat.

Another troubling aspect of the evidence at trial was that as Plaintiff persisted in her search for a position in the Stinson fishing fleet, she encountered newly enacted "minimum qualifications" for boat positions. These minimum qualifications did not apply to all of the crew members previously hired off the docks by Stinson boat captains. The tactics employed by Stinson management in attempting to make minimum qualifications and hiring practices retroactive demonstrate a sophistication in personnel issues and confirm its clear position against hiring women on its boats.

The Court also takes note of the fact that there was not ever any alleged misconduct on the part of Plaintiff. On the contrary, she is, and has always been, considered an excellent employee. With regard to settlement, Plaintiff asserts, and Defendant does not dispute, that there has been no effort whatsoever on Stinson's part to settle this case. Plaintiff made an offer to settle the case and Stinson has never made any counteroffer.

In light of the previously discussed notable characteristics of this case and after a careful review of Plaintiff's itemized statement of time spent on the prosecution of this case, the Court finds that 218.1 hours are directly attributable to the pursuit of a claim under section 2000e–2(m).[4] The Court further finds that the rate of $150 per hour, requested by Plaintiff's attorney, is reasonable compensation for an experienced lawyer in an employment discrimination case. In addition, the Court finds that the costs of $1,076.05 incurred in the litigation of this case are directly attributable to the pursuit of the employment discrimination claim under section 2000e–2(m).

4. The Court has disallowed 5 of the 12.8 hours charged for the preparation of Plaintiff's post-trial brief because that is a reasonable estimate of the amount of time spent on the unsuccessful post-trial portion of the MHRA claim. The Court will not, however, reduce any of the pretrial and trial attorney time charged by Plaintiff as a result of its conclusion that Maine law does not recognize mixed-motive discrimination. The parties treated the claims under Title VII and the MRRA as proved by the same evidence and under the same method of analysis. Therefore, any time Plaintiff spent in an attempt to prove the MHRA claim is also chargeable to proving the Title VII claim.

Accordingly, it is **ORDERED** that Stinson Seafood Company pay to Plaintiff Thirty–Three Thousand Seven Hundred Ninety–One Dollars and Five Cents ($33,791.05) in attorney fees and costs. It is further **ORDERED** that Stinson Seafood cease and desist from any further discriminatory employment practice based, in whole or in part, on considerations of sex.