David C. BISHOP, Plaintiff,

v.

**BELL ATLANTIC CORPORATION,**
**Defendant.**

**Civil No. 99–CV–189–B.**

United States District Court,
D. Maine.

Nov. 19, 1999.

---

Martha Temple, Foote & Temple, Bangor, ME, for plaintiff.

Frank McGuire, Rudman & Winchell, Bangor, ME, Barry A. Guryan, Epstein, Becker & Green, Boston, MA, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

David C. Bishop ("Bishop") originally filed this action against Bell Atlantic Corporation ("Bell Atlantic") in the Maine Superior Court of Hancock County, where he alleged retaliation and discrimination with regard to his compensation, terms, conditions, and privileges of employment, in violation of the Maine Whistleblowers' Protection Act ("MWPA" or "Whistleblowers' Act"), 26 M.R.S.A § 831 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4572. Asserting that this Court has both diversity and federal-question jurisdiction over this claim, Bell Atlantic removed Bishop's case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. Before the Court is Bell Atlantic's Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6), or, in the alternative, its Motion for Summary Judgment under Fed.R.Civ.P. 56(c). For the reasons stated below, Bell Atlantic's Motion is GRANTED in part and DENIED in part.

### STANDARD OF REVIEW

Because the Court has considered the Statement of Material Facts and affidavits filed by each party, the Court treats Bell Atlantic's Motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.")

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). "Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialled, or stronger." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Rather, for the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

### STATEMENT OF FACTS[1]

Since 1988, Bishop has worked as a Splice Service Technician at Bell Atlantic's Ellsworth, Maine, facility. At all relevant times, he has been a member of Local 2327 of the International Brotherhood of Electrical Workers, AFL—CIO ("Union"). From September 12, 1991, to August 8, 1998, Bell Atlantic and the Union were parties to a collective bargaining agreement ("Agreement" or "CBA"). They are now parties to a successor agreement that expires on August 5, 2000.

Bishop alleges that, on or about May 5, 1997, his immediate supervisor, Frank Szylvian, grabbed him by the shirt and chest, and pushed him up against a wall. In response, Bishop immediately called

---

1. The Court notes that Plaintiff failed to comply properly with Local Rule 56, making the Court's analysis of the material facts more difficult. Fortunately for Plaintiff, most of the facts necessary for deciding this motion do not appear to be in dispute.

911, and an Ellsworth police officer responded. On that same day, Bishop also called Michael Dunphy, Mr. Szylvian's supervisor, to report this assault. Bishop claims that almost immediately after calling the police, Defendant, through its agents and employees, interfered with, or attempted to interfere with, Bishop's overtime opportunities, which Bishop had consistently availed himself of prior to this incident. Defendant took these opportunities away from Bishop by telling dispatch operators to "lock him out" of overtime, by calling him back from jobs before he had completed them, and by no longer posting overtime opportunities on his computer. As a consequence, Bishop lost overtime income. Bishop also claims that his supervisors and their agents started to follow him, and wrote him up for alleged work infractions.

In response to this retaliation, Bishop filed a claim with the Maine Human Rights Commission on October 7, 1997, alleging that Defendant violated the Maine Whistleblowers' Protection Act. Rather than alleviate the retaliation, this filing allegedly exacerbated it. Bishop claims that in December of 1997 and in January of 1998, Defendant retaliated against him in various ways, including, but not limited to, refusing to provide outdoor safety gear to him in a timely manner, and refusing to team him up with another worker during the Ice Storm of 1998. In response, Bishop filed another charge with the Maine Human Rights Commission on February 12, 1998. The Commission held fact-finding hearings on his charges of discrimination on February 26, 1998, and on May 28, 1998. Despite these hearings, the retaliation allegedly continued in August of 1998, when Bell Atlantic forced Bishop to work while he was injured, against the advice of his health care providers. Bishop asserts

in his Complaint that the retaliation by Defendant "continues to this day."

## DISCUSSION

A. Preemption and Section 301 of the Labor Management Relations Act

■ Defendant asserts that Bishop's claims are preempted by Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). That section provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

A complex preemption doctrine has grown out of these words, resulting in the preclusion of many state law actions brought by employees who work pursuant to collective bargaining agreements. *See Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 10 (1st Cir.1999) (summarizing history of section 301 preemption).[2] Specifically, section 301 preemption precludes state-law claims "whenever resolution of a plaintiff's claim is substantially dependent on analysis of a CBA's terms." *Lydon*, 175 F.3d at 10 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). Therefore, preemption does not apply to all labor disputes that are cast as state-law claims. *See id.* For example, "mere parallelism between a state law claim and a federal contract claim does not necessarily require state court interpretation of the CBA—that is, as long as the state claim can be resolved without construing the agreement itself, it is not preempted by Section 301." *Id.* (citing

---

**2.** According to the Supreme Court, preemption of state-law claims is required in order to ensure the uniform interpretation of CBAs necessary for peaceful and consistent resolution of disputes between labor and management.

ment. *See Livadas v. Bradshaw*, 512 U.S. 107, 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

*Lingle,* 486 U.S. at 409–10, 108 S.Ct. 1877). Thus, preemption applies only when there is a "real interpretive dispute" of a CBA's terms. *Id.* (citing *Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40, 42 (1st Cir. 1997)). The consultation of a CBA in the course of litigating a state-law claim is not sufficient to extinguish that claim. *See Livadas,* 512 U.S. at 124, 114 S.Ct. 2068. "Courts confronted with state law claims must therefore locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims." *Lydon,* 175 F.3d at 10.

1. The Maine Whistleblowers' Protection Act

This line is easy to locate where the state's employment statute at issue requires courts to interpret collective bargaining agreements. Although the Court has not found any cases in which a court has construed the Whistleblowers' Act in this preemption context, the First Circuit, on three separate occasions, decided that a similar provision in a separate statute mandates section 301 preemption. *See Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6, 11 (1st Cir.1999) (construing Mass. Gen.L. ch. 152, § 75A & 75B); *Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40 (1st Cir.1997) (construing Mass.Gen.L. ch. 152, § 75A & 75B); *Magerer v. John Sexton Co.,* 912 F.2d 525, 529–30 (1st Cir.1990) (construing Mass.Gen.L. ch. 152, § 75B). In those cases all three of the plaintiff-employees worked under a CBA and all three alleged that their employers retaliated against them for exercising their rights under the Massachusetts Workers' Compensation Act ("MWCA"). In each case, the Court decided that the employee's claim was preempted because the MWCA contains the following proviso:

3. Two of those cases involved section 75A of the MWCA, which contained a similar proviso that is identical in substance to section 75B. *See Lydon,* 175 F.3d at 11.

4. The Court would have to look to multiple provisions of the CBA in order to conclude

In the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement will prevail.

*See* Mass.Gen.L. ch. 152, § 75B.[3] This proviso, the Court reasoned, requires courts to interpret the collective bargaining agreements at issue to determine whether such an agreement is "inconsistent" with the MWCA. *Lydon,* 175 F.3d at 11; *see also Martin,* 105 F.3d at 44 (holding that state-law claims under the MWCA are preempted "not because the collective bargaining agreement *is* inconsistent with the state claims asserted, but because it *may* be so and requires interpretation") (emphasis in original).

■ The Maine Whistleblowers' Protection Act contains a provision similar to the one in the MWCA that required preemption in *Lydon, Martin,* and *Magerer.* The Whistleblowers' Act provides that it "shall not be construed to diminish or impair the rights of a person under any collective bargaining agreement." 26 M.R.S.A § 837. This provision would require the Court to interpret the CBA between Bell Atlantic and Bishop's Union in order to ensure that the Whistleblowers' Act does not "diminish or impair the rights" of those operating under the CBA.[4] Since the Court is not permitted to engage in such interpretation, Plaintiff's claim under the Maine Whistleblowers' Protection Act is preempted. If the Whistleblowers' Act did not contain this provision in section 837, it is highly unlikely that Bishop's claim would be preempted under section 301 of the LMRA. *See Martin,* 105 F.3d at 43 ("It is very doubtful whether, without this ... proviso, [Defendant] would have any plausible claim of federal preemption.")

Plaintiff attempts to distinguish this case from the First Circuit's MWCA cases

that the Whistleblowers' Act does or does not impair or diminish the rights of those operating under the Agreement. For example, the CBA contains provisions regarding the rights of management, and the fair and equitable distribution of overtime hours.

by asserting that the statute in those cases "specifically defer[s] to the collective bargaining agreement," whereas the Whistleblowers' Act only requires that it not be construed to diminish or impair the rights of those operating under a CBA. This distinction is not sufficient to evade the First Circuit's mandate. In attempting to determine whether a statute is "inconsistent" with a collective bargaining agreement, or whether it "impair[s] or diminish[es]" the rights of those operating under such agreements, the Court would be engaged in the forbidden interpretation of a CBA. Even if Bishop's claim under the Whistleblowers' Act could ultimately be stated and proven without reference to the CBA, the Court would first have to interpret the CBA to determine whether or not the Act would diminish or impair the rights of employees or management under the CBA. It is this interpretation that the First Circuit has prohibited.

Plaintiff also argues that since the CBA does not mention the Whistleblowers' Act, there are no CBA provisions that require interpretation, and, therefore, the rights of those operating under the CBA will not be impaired or diminished. A CBA need not mention a particular statute in order for that statute to require the interpretation of the agreement. None of the CBAs at issue in *Lydon*, *Martin*, or *Magerer* referred to the Massachusetts Workers' Compensation Act.

## 2. The Maine Human Rights Act

██ Because Bishop contends that Bell Atlantic retaliated against him after he filed a Whistleblowers' Act charge with the Maine Human Rights Commission, he also files a claim under section 4572 of the Maine Human Rights Act. The relevant portion of that section provides that it is unlawful employment discrimination:

> for an employer, employment agency or labor organization to discriminate in any manner against individuals because they have opposed a practice that would be a violation of this Act or because they have made a charge, testified or assisted in any investigation, proceeding or hearing under this Act.

5 M.R.S.A. § 4572(1)(E).[5] The MHRA contains no provision similar to section 837 of the Whistleblowers' Act. Since that section was essential for federal preemption of the Whistleblowers' Act claim, see *Martin*, 105 F.3d at 43, Plaintiff's claim of retaliation under the Maine Human Rights Act is not preempted.

In its memoranda filed in support of its Motion for Summary Judgment, Bell Atlantic repeatedly stresses that preemption of Bishop's Whistleblowing Act and MHRA claims is required because the Court will have to look to the Agreement to determine whether or not Bishop's or the Company's rights under the Agreement are diminished or impaired. This argument merges the two claims, for it applies the language of section 837 of the Whistleblowers' Act, which requires the Court to make such an inquiry, to the MHRA claim, which does not.

Although Bell Atlantic does not address the preemption of the MHRA claim as

---

5. Plaintiff actually asserts a claim under section 4572 generally, without naming the specific subsection upon which he bases his claim. In addition to section 4572(1)(E), section 4572(1)(A) addresses Whistleblowers' Act violations, for it provides that it is unlawful employment discrimination:

> For any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment ... because of previous actions taken by the applicant that are protected under [the Maine Whistleblowers' Protection Act]; or, because of

> [this reason], to discharge an employee or discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment....

Because the Court finds that Plaintiff's asserted facts can support a claim under section 4572(1)(E), the Court does not address whether a claim under section 4572(1)(A) is subject to federal preemption under section 301 of the LMRA.

distinct from the Whistleblowers' Act claim, it does assert that the Court cannot reach the merits of Bishop's retaliation claims regarding his working conditions without interpreting the CBA, since the CBA contains multiple provisions regarding those conditions. For example, the CBA contains a management's rights clause, as well as clauses regarding employer-provided safety equipment, the equitable distribution of overtime income, the weather conditions in which splice service technicians must work in pairs, and the accommodations available to disabled employees.

■ In order to determine whether or not the Court will have to interpret the CBA in deciding Bishop's MHRA retaliation claim, the Court must look to the elements that Plaintiff must satisfy to make such a claim.[6] To fulfill these elements, Plaintiff must prove that (1) he engaged in protected conduct under the MHRA; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action. *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (citing 42 U.S.C. § 2000e–3, Title VII's retaliation provision).

**6.** Since it appears that the Maine Supreme Court has yet to lay out the elements of a retaliation claim under the MHRA, the Court must look to the elements of a retaliation claim under Title VII, MHRA's federal counterpart. *See Forrest v. Stinson Seafood Co.,* 990 F.Supp. 41, 43–44 (D.Me.1998) (canvassing Maine case law, which holds that Maine Courts should look to the federal case law of Title VII to construe statutory equivalents in the MHRA).

**7.** Numerous circuit courts of appeals have likewise held that claims of retaliation and retaliatory discharge are not preempted under section 301 of the LMRA. *See, e.g., Meyer v. Schnucks Markets, Inc.,* 163 F.3d 1048, 1049–1050 (8th Cir.1998) (holding that plaintiff's various state claims, which arose out of the defendant-employer's retaliation against the plaintiff for complaining about the defendant's health and safety violations, are not preempted); *Owen v. Carpenters' District*

Bishop can attempt to satisfy these elements without referencing the CBA. "[P]urely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." *Flibotte v. Pennsylvania Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir.1997) (quoting *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 261, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)). In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court held that a state-law retaliatory discharge claim turned on this factual inquiry, and, therefore, did not require the Court to interpret any term of the collective bargaining agreement. *Id.,* at 407, 108 S.Ct. 1877.[7] As noted earlier, the First Circuit in *Martin,* in finding it "very doubtful" that preemption of retaliation claims could take place in the absence of a provision in the governing state statute that requires courts to interpret CBAs, appears to be consistent with this conclusion. *See Martin,* 105 F.3d at 43.

■ The fact that Bell Atlantic may raise provisions of the CBA as a defense to Bishop's MHRA retaliation claim does not change this analysis.[8] Even if such a de-

*Council,* 161 F.3d 767, 775 (4th Cir.1998) (holding that "no reference to the CBA [was] required to resolve" the plaintiff's wrongful discharge claim, which was based on retaliation for complaining about sexual harassment); *Jarvis v. Nobel/Sysco Food Servs. Co.,* 985 F.2d 1419, 1427 (10th Cir.1993) ("So long as the state-law cause of action is concerned not with the employer's contractual right to discharge the employee, but rather with its motives in exercising that right, the CBA is not relevant and preemption does not apply.") (retaliatory discharge case).

**8.** It is not clear that Bell Atlantic would need to raise the CBA in its defense. "To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; this purely factual inquiry ... does not turn on the meaning of any provision of a collective bargaining agreement." *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877.

fense requires the Court to construe the CBA, the "presence of a federal question, even a § 301 question, in a defensive argument" does not require preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *Id.* Therefore, the Court finds that Bishop's MHRA claim is not preempted and that there remains a genuine issue of material fact as to whether Defendant retaliated against Bishop because he filed a claim with the Maine Human Rights Commission.[9]

For the foregoing reasons, the Defendant's Motion with regard to Count I, Plaintiff's Whistleblowers' Act claim, is GRANTED, and Defendant's Motion with regard to Count II and III is DENIED to the extent that those counts state a retaliation claim under the Maine Human Rights Act.

*SO ORDERED.*

---

**9.** Although this Court does not have federal-question jurisdiction over this MHRA claim, it retains subject-matter jurisdiction over this case on the grounds of diversity, which was the Defendant's alternative basis for the removal of this case from state court.