7 F.3d 218
 144 L.R.R.M. (BNA) 2520
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Leanders H. SMITH, Plaintiff, Appellant,
v.
WGBH EDUCATIONAL FOUNDATION, INC., Defendant, Appellee.
 No. 93-1213.
 United States Court of Appeals,
First Circuit.
 September 27, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 Leanders H. Smith on brief pro se.
 Alan D. Rose, Diane G. Rosse, Marilee Denelle and Nutter, McClennen & Fish on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Breyer, Chief Judge, Selya and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Leanders H. Smith sued WGBH Educational Foundation, Inc. (WGBH) in state court, alleging that it had violated his rights under Massachusetts' workers' compensation laws, M.G.L. ch. 152, §§ 75A, 75B, when it refused his request to return to work after being on a disability leave during which he had received compensation benefits. WGBH removed Smith's action to federal district court, and moved for summary judgment, which the district court granted. Smith is appealing that order as well as orders denying motions that the court disqualify itself from hearing Smith's case, remand his case to the state court, and permit certain depositions to proceed. We affirm for the reasons stated in the district court's orders, and elaborate only as necessary to clarify the court's briefly stated reasons.
 
 
 2
 1. Removal/Preemption. In Magerer v. John Sexton & Co., 912 F.2d 525 (1st Cir. 1990), we held that a retaliatory discharge claim brought under M.G.L. ch. 152, § 75B, was completely preempted under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), where the plaintiff was subject to a collective bargaining agreement which contained a management rights clause giving the employer/defendant the right to "discharge employees for proper cause." Since the definition of "proper cause" under the agreement could permit employer discharges not permitted under section 75B, we found that the rights and obligations of Magerer and his employer were controlled by the contractual provisions governing discharge and not by any independent state standard found in the workers' compensation laws of Massachusetts. Id. at 530. In so doing, we relied on the specific language in section 75B, which provided that, if the rights granted employees under that section were inconsistent with a collective bargaining agreement, the agreement was to prevail. The collective bargaining agreement between WGBH and the National Association of Broadcast Employees and Technicians (NABET) contains essentially the same clause as the one we considered in Magerer. Article XIX of the agreement provides that "[t]he right to discipline and discharge employees for just cause shall remain the prerogative of [WGBH]." Thus, under Magerer, Smith's section 75B claim requires interpretation of the collective bargaining agreement and for that reason it is completely preempted under section 301 of the Labor Management Relations Act. Id.
 
 
 3
 The district court's conclusion that Smith's state law claims were preempted was also correct with respect to Smith's claim under section 75A. Like section 75B, section 75A states that an applicable collective bargaining agreement which is inconsistent with the rights granted in section 75A is to prevail over section 75A. Section 75A grants a preference in hiring to any former employee who has lost a job due to a compensable injury under workers' compensation over other applicants not employed at the time when such former employee seeks to be rehired. As a general matter, Article 13.1 of WGBH's collective bargaining agreement gives WGBH "the sole and exclusive right to make all decisions regarding the management, operation and programming of [its] operations, including determination of the number of employees covered by this Agreement," suggesting that WGBH may hire or not hire employees as it sees fit and that it is not required to grant any preference to former employees who have lost their employment due to injuries compensable under Massachusetts' workers' compensation law. More specifically, Article 17.3 of the agreement requires WGBH to rehire laid-off employees according to seniority. For certain types of available work, moreover, Article 3.7(a) also states a hiring preference based on seniority for regular staff employees who have been laid off. The seniority principle for rehiring laid-off employees is inconsistent with section 75A's hiring preference for employees laid off or discharged because of injuries compensable under Massachusetts' workers' compensation law. Thus, under the reasoning of Magerer, Smith's section 75A claim requires interpretation of the collective bargaining agreement and for that reason it, too, is completely preempted.
 
 
 4
 Since Smith's claim is completely preempted under section 301, it states a federal claim and thus arises under federal law, Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968); Magerer, 912 F.2d at 528, and not under Massachusetts law. Consequently, 28 U.S.C. § 1445(c), which prohibits the removal to federal court of claims arising under a state workmen's compensation law, does not apply, and removal of the claim here was proper. See Vantine v. Elkhart Brass Manufacturing Co., 762 F.2d 511, 517-18 (7th Cir. 1985) (section 1445(c) did not bar removal of a claim brought under a state's workmen's compensation laws; under the state's laws, the cause of action arose under the collective bargaining agreement and thus stated a federal claim under section 301 which rendered removal to the district court proper); Smith v. Union Carbide Corporation, 664 F. Supp. 290, 292 (E.D. Tenn. 1987) (section 1445(c) did not bar removal of an action brought under a state's workmen's compensation law because the plaintiff's suit was an independent, judicially created tort action, and so did not arise under the state's workmen's compensation laws, and because it was preempted by federal labor law and therefore arose under federal and not state law).
 
 
 5
 2. Smith's Employment Status as of August 1989. If Smith was subject to WGBH's collective bargaining agreement, dismissal of his suit was proper since his only remedy for his discharge was resort to the grievance and arbitration procedures of that agreement. See Allis-Chalmers Corporation v. Lueck, 471 U.S. 202, 220-21 (1985). In affidavits, Smith claimed that his employment at WGBH had ended before August 1989 and that he was not subject to the WGBH-NABET collective bargaining agreement. Accordingly, he argues that he was not bound by a 1990 arbitral decision which found that WGBH had discharged him for just cause, and he says that he is free to sue in court. In view of the overwhelming evidence to the contrary, we find that his allegations do not establish the existence of a genuine issue of material fact sufficient to defeat WGBH's motion for summary judgment. Petitti v. New England Telephone & Telegraph Co., 909 F.2d 28, 30 (1st Cir. 1990) (summary judgment is proper if evidence is so one-sided that one party must prevail as a matter of law).
 
 
 6
 Smith claims that his employment had terminated before August 1989 under Article 17.2(f) of the collective bargaining agreement. That article provided for loss of seniority by employees absent from work due to injury for more than 15 months, and was understood by the parties to terminate the employment of such employees. As of August 1989, Smith had been on disability leave for more than 15 months, having begun his leave in February 1986. In an affidavit, WGBH's Human Resources Director, Michael Enwright, who negotiated WGBH's 1987-90 contract with NABET, stated that WGBH had accepted the union's demand during those negotiations that Smith be excluded from the operation of Article 17.2(f). Smith's disability leave began in 1986, when the 1984-87 contract was in effect, and Enwright stated in his affidavit that that contract did not contain Article 17.2(f). Smith has not introduced any affidavit by the union to the contrary, nor has he denied Enwright's sworn statement that the 1984-87 contract did not contain Article 17.2(f).
 
 
 7
 In an affidavit, Smith states that John Plausse, his direct supervisor, had told him during his leave that he was not subject to the collective bargaining agreement. Nevertheless, the pleadings, affidavits and underlying documentary evidence submitted by the parties show conclusively that, even if Plausse had told Smith that he was not subject to the collective bargaining agreement, Smith knew that his employment with WGBH had not been terminated before August 1989 and that he continued to be subject to the collective bargaining agreement. Among the many pieces of evidence, we highlight only the following: Smith's complaint stating that on or about November 22, 1989, WGBH had refused to allow him to "return to work"; Smith's letter to WGBH on August 2, 1989, notifying Enwright that Smith was changing his "return to work" date from September 18, 1989, to September 1, 1989, telling Enwright to let Plausse know of the change so that Plausse could make necessary plans, asking Enwright whether his vacation time had been adjusted and informing Enwright that he would be taking the first two weeks of October off; the arbitration transcript which reveals that the union arbitrated Smith's November 22, 1989 discharge (for misconduct not at issue here), that Smith was consulted about and approved NABET's and WGBH's selection of an arbitrator, and that Smith attended the arbitration on dates in 1989 and 1990 and actively assisted the union in presenting evidence on his behalf; and Smith's affidavit stating that he is still a member of NABET, a critical admission since membership in the union is a condition of employment under the collective bargaining agreement. See Agreement Between NABET and WGBH Educational Foundation, Inc. 1987-1990, Art. 3.1. Although Smith argues that certain letters and documents show that he was not an employee for any purpose under the collective bargaining agreement during his leave, those letters and documents show only that he was not classified as an "active" employee at that time and thus did not have the rights granted active employees under the agreement (e.g., vacation, sick leave, and holiday benefits). The collective bargaining agreement distinguishes clearly between the rights of active employees and those of non-active employees on leave of absence (see, e.g., id. Art. 9.5(c), 9.7; Art. XII); nowhere does it suggest that non-active employees on leave are not in the bargaining unit or not subject to the grievance and arbitration provisions of the contract.
 
 
 8
 Smith's other claims are without merit for the reasons stated in the orders being appealed.
 
 
 9
 Affirmed.