**Joseph LYDON, Plaintiff,**

v.

**BOSTON SAND & GRAVEL COMPANY, Defendant.**

**Civil Action No. 98–10664–EFH.**

United States District Court,
D. Massachusetts.

July 13, 1998.

---

James T. Masteralexis, Boston, MA, for Joseph Lydon.

Robert P. Corcoran, Gleeson & Corcoran, Boston, MA, for Boston Sand & Gravel Co.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This case presents novel issues surrounding the interplay between the scope of federal labor policy and the jurisdiction of district courts to entertain certain union employee claims filed in state court. This civil action was originally filed in Massachusetts Superior Court. The Complaint contains two counts alleging violations of Mass.Gen.L. ch. 152, §§ 75A and 75B, the Massachusetts Workers' Compensation Statute, for failing to reinstate plaintiff with his accrued seniority rights and for failing to give him preference for hiring after a period of disability. Defendant removed the case to federal district court under 28 U.S.C. § 1441(b) on the basis of federal preemption under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Plaintiff filed a motion to remand the case to state court. Defendant filed a motion to dismiss and a motion for summary judgment. At the core of both parties' motions is the jurisdiction of this Court to decide plaintiff's claims: without preemption there is no federal subject matter jurisdiction and without jurisdiction the Court lacks power to decide.

## I. FACTS

Plaintiff Joseph Lydon was hired as a mixer driver by Defendant Boston Sand & Gravel in May, 1984. It is undisputed that as a mixer driver he was covered under a collective bargaining agreement ("CBA") between defendant and Teamsters Local 379 ("Local 379"), of which he was a member. Plaintiff sustained a work related neck injury on July 23, 1991 which disabled him. He received weekly workers' compensation benefits pursuant to Chapter 152 of the Massachusetts Workers' Compensation Statute until May, 1993. On May 4, 1993, plaintiff entered into a "lump sum" settlement agreement in the total amount of $97,500 which was to cover the projected four years of his disability.

In the Fall of 1993 plaintiff went to work for a different employer, Sherman Concrete, as a mixer driver. In April, 1995, plaintiff contacted defendant and requested that he be permitted to return to work for defendant.

On May 9, 1995, plaintiff met with Daved McNeil, Vice President of defendant, regarding his re-employment. McNeil told him that defendant believed plaintiff had voluntarily quit his job and that by accepting employment with Sherman Concrete he had forfeited his accrued seniority. On September 14, 1995 Local 379 demanded by letter that plaintiff be reinstated with seniority. Defendant replied by letter that any grievance pursuant to the CBA was untimely filed.

Both parties held further discussions between December, 1995 and February, 1996 regarding the reinstatement rights of workers who enter into lump sum settlements. They agreed that no language regarding seniority rights of employees who entered into lump sum settlements was present in Article VII of the CBA. They further agreed that reinstatement rights would be determined by the Workers' Compensation Statute and not by the CBA.

On May 5, 1997, plaintiff demanded that he be reinstated pursuant to the preferential right of re-hire afforded by the workers' compensation statute. Plaintiff returned to work on August 7, 1997. He was given seniority above the other workers who were hired during that summer, but was not reinstated with his accrued seniority dating from 1984.

On August 17, 1997, Local 379 filed a grievance against defendant claiming that reinstating plaintiff without his accrued seniority violated the CBA. After a hearing the Arbitrator found that the grievance was not arbitrable pursuant to the CBA and the grievance was denied on December 11, 1997.

Plaintiff filed the present civil action in Massachusetts Superior Court on March 31, 1998. Plaintiff seeks reinstatement of accrued seniority rights and lost wages due to his lower seniority position. With his present seniority date plaintiff is fifty-eighth on the list as opposed to his original seniority date which would have placed him at position seventeen. The seniority ranking affects plaintiff's contractual wage rate, vacation allowance, and work opportunities. On April 17, 1998 defendant removed the case to the federal district court on the basis of Section 301 preemption.

## II. *JURISDICTION*

A federal court may not, of course, address the merits of a claim without first determining whether it has jurisdiction. Accordingly, when a case is removed to federal district court under 8 U.S.C. § 1441(b), the Court must be assured that the claim arises under the Constitution, treaties, or laws of the United States. Unlike state courts, federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Only after a court rules that it has jurisdiction may it reach the merits of the case.

Plaintiff argues that 28 U.S.C. § 1445(c) bars removal of this case because plaintiff's causes of action arise under the Massachusetts Workers' Compensation Statute. Section 1445(c) reads in relevant part:

> A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

When a case is removed from state court, the burden is on the party who removed the action to prove that the federal court has jurisdiction. Therefore, even though it is the plaintiff's motion to remand before the court, defendant has the burden of proving that Section 1445(c) does not bar removal.

There is little case law on the scope of Section 1445(c) in the Court of Appeals for the First Circuit. *See generally Armistead v. C & M Transport, Inc.,* 49 F.3d 43, 46–47 (1st Cir.1995). Under the plain meaning of the statute, where a state legislature enacts a provision within its workers' compensation laws and creates a specific cause of action, a civil action brought to enforce that cause of action is, by definition, a civil action arising under the workers' compensation laws of that state and therefore Section 1445(c) applies. *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, 1246 (8th Cir.1995). It is undisputed that plaintiff has filed a civil action under Mass. Gen.L. ch. 152, §§ 75A and 75B, the Workers' Compensation Statute. Defendant raises two arguments as to why Section 1445(c) does not strip this Court of subject matter

jurisdiction: one procedural and the other substantive.

### A. *Motion to Remand Untimely Filed*

First, defendant argues that plaintiff's motion to remand was untimely filed. Under 28 U.S.C. § 1447(c),[1] a motion challenging subject matter jurisdiction may be made at any time, but objections based on a "defect in removal procedure" must be made within thirty days of the removal. This statute makes a distinction between procedural defects in removal and the lack of subject matter jurisdiction. If a plaintiff finds fault with a procedural element in removal, he has only thirty days in which to make a motion to remand. On the other hand, if he asserts that the federal court lacks subject matter jurisdiction, he may move to remand at any time before final judgment. The notice of removal was filed on April 17, 1998. Plaintiff's motion to remand was made on May 26, 1998. Defendant argues that plaintiff waived any objection to the lack of removal jurisdiction due to Section 1445(c) by failing to move for a remand within this thirty-day period.

There is disagreement among the courts of appeals on the effect of the Section 1447(c) waiver rule on Section 1445(c). *Compare Williams v. AC Spark Plugs Div. of Gen. Motors Corp.,* 985 F.2d 783, 786 (5th Cir. 1993) (Section 1445(c) should be treated as the embodiment of a procedural defect and, thus, subject to Section 1447(c)'s thirty-day waiver rule) *with Hurt v. Dow Chem. Co.,* 963 F.2d 1142, 1145 (8th Cir.1992) (determining that a failure to object to lack of removal jurisdiction under Section 1441(b) did not operate as a waiver). The Court of Appeals for the First Circuit in *Armistead* raised this precise issue as to whether the Section

1447(c) waiver rule governs Section 1445(c), yet declined to rule on it. 49 F.3d at 46–47. The Court of Appeals for the First Circuit acknowledged that there was disagreement in the other circuits as to whether Section 1445(c) is subject to the thirty-day waiver rule, but did not reach the issue because the district court in *Armistead* lacked removal jurisdiction and original diversity jurisdiction. *Id.* Similar to the Court of Appeals for the First Circuit in *Armistead,* the Court need not choose between these contradictory views because the Court finds defendant's second argument more persuasive.

### B. *Complete Preemption Bars Section 1445(c)*

Plaintiff argues that so long as a claim arises under a state's workers' compensation laws, as is the case here, Section 1445(c) applies and the action is per se non-removable. Defendant contends that Section 1445(c) does not operate to preclude federal district court jurisdiction in cases of complete preemption.[2] There is no controlling authority on this point. However, the Court of Appeals for the First Circuit and other courts of appeals have hinted that Section 1445(c) does not apply under the complete pre-emption doctrine. *See generally Smith v. WGBH Educational Foundation, Inc.,* 1993 WL 375816 (1st Cir.1993) (unpublished disposition); *Humphrey,* 58 F.3d at 1246, f. 11. The Court adopts the reasoning of these cases and applies it to the present facts.

The Court of Appeals for the First Circuit in *Smith,* an unpublished per curiam opinion,[3] discussed a factual situation very similar to the one present in this case. The causes of action in *Smith* were brought under Sec-

---

1. The statute states in relevant part:
   A motion to remand the case on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

2. In *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22–23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the United States Supreme Court defined the "complete preemp-

tion" doctrine as "an independent corollary of the well pleaded complaint rule." Under this corollary, a claim involving interpretation or enforcement of a collective bargaining agreement is so completely a federal claim that it is converted into a Section 301 claim from its inception, even if alternative causes of action are pleaded in the complaint. *Id.*

3. Recognizing First Circuit Local Rule 36.2(b)6, the Court cites to the unpublished opinion because it is instructive on this issue of first impression.

tions 75A and 75B, the same statutes at issue in the present case. *Smith,* 7 F.3d 218, 1993 WL 375816 *1, *2. The Court of Appeals for the First Circuit found that the claims were preempted under Section 301. *Id.* at *2. The Court of Appeals reasoned that since these claims were completely pre-empted under Section 301, they stated a federal claim and thus arose under federal law and not under Massachusetts laws. *Id.* Consequently, the court in *Smith* found that Section 1445(c) did not apply and removal was proper. *Id.*

This same reasoning finds support in a decision of the Court of Appeals for the Eighth Circuit. In *Humphrey,* the plaintiff argued that so long as a claim arises under a state's workers' compensation laws, Section 1445(c) applies and the action is per se non-removable. *Humphrey,* 58 F.3d at 1246, f. 11. The Court of Appeals for the Eight Circuit stated in dicta that "We decline to adopt such a broad rule, however, because we believe, as a matter of Congressional intent, that 1445(c) would not apply to a claim which is completely preempted by federal law and only facially arises under a state's workers' compensation laws." *Id.*

The reasoning of these cases comports with the federal approach to the resolution of labor management disputes. Congress "authorized federal courts to create a body of federal law for the enforcement of collective bargaining agreements—'which law the courts must fashion from the policy of our national labor laws.'" *IBEW v. Hechler,* 481 U.S. 851, 855, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (quoting *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). To this end Congress has enacted a broad statutory scheme to ensue that collective bargaining agreements are interpreted uniformly based on federal labor law principles. *See generally Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) ("The dimensions of Section 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute."); *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111, 114 (1st Cir. 1988) ("The Supreme Court has long recognized that the breadth of Section 301 is no

accident, but is commensurate with an overreaching congressional purpose.") In light of this broad power, the Court does not believe that Congress would have intended that Section 1445(c) disrupt federal court jurisdiction where there is federal subject matter jurisdiction under the federal labor statutes.

Congress enacted Section 1445(c) in 1958 pursuant to a trend to restrict diversity jurisdiction, minimize the caseload of federal courts, and encourage the prosecution of workers' compensation cases in state courts, where persons claiming benefits under the workers' compensation laws were granted a completely adequate remedy. *See National Surety Corporation v. Chamberlain,* 171 F.Supp. 591, 594 (D.Tex.1959). The Judicial Conference of the United States recommended to Congress that the workload of federal courts had greatly increased because of the removal of workers' compensation cases from the state courts to the district courts. Sen.Rep. 1830, 85 Cong.2nd Sess., U.S.Code Cong. & Admin.News p. 3105 (1958). Based on the congressional concerns regarding diversity jurisdiction underpinning Section 1445(c) and the competing federal labor policy concerns, the Court rules that removal of a state law claim which is preempted under Section 301 is not barred by Section 1445(c). Thus, the jurisdictional and preemption questions are tightly intertwined and the Court must now turn to the Section 301 preemption claim. *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1329 (6th Cir.), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989) ("[T]he issues of federal preemption and removability largely merge.")

### III. *SECTION 301 PREEMPTION*

■ Therefore, the central issue before the Court is whether plaintiff's state law claims are preempted as a matter of law under Section 301(a) of the Labor–Management Relations Act. It is well-established that Section 301 completely preempts a state law claim if the resolution of the claim necessitates analysis of or substantially depends on the meaning of a collective bargaining agreement. *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108

S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Magerer v. John Sexton & Co.,* 912 F.2d 525, 528 (1st Cir.1990).

■ The Court of Appeals for the First Circuit in *Flibotte v. Pennsylvania Truck Lines, Inc.,* 131 F.3d 21, 25–27 (1st Cir.1997), detailed the analytical framework for Section 301 preemption. A state-law claim can "depend" on the "meaning" of a collective bargaining agreement in two ways. *Id.* First, a claim so qualifies if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement. *United Steelworkers v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). Second, a claim so qualifies if its resolution arguably hinges upon an interpretation of the collective bargaining agreement. *Allis–Chalmers Corp.,* 471 U.S. at 220, 105 S.Ct. 1904.

■ Plaintiff filed this suit under Mass. Gen.L. ch. 152, §§ 75A, 75B. Section 75A creates a priority for rehiring:

Any person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available.

The relevant portion of Section 75B(2) states that "[n]o employer … shall … refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this [workers' compensation] chapter." Prior to the filing of this action plaintiff had been rehired by defendant. Plaintiff's complaint now seeks damages and lost wages based on defendant's calculation of his seniority rights. The Court must thus determine whether the resolution of employee seniority rights is inextricably intertwined with the CBA.

It is well settled that seniority rights do not stem from the employer-employee relationship and by extension become an employment right, but rather from either a statute or the four corners of a collective bargaining agreement. *Wightman v. Springfield Terminal Railway Company,* 100 F.3d 228, 232–33 (1st Cir.1996); *see also* Aaron, *Reflections on the Legal Nature and Enforceability of Seniority Rights,* 75 Harv.L.Rev. 1532, 1534 (1962) ("[S]eniority is thus the product of collective bargaining; it owes it very existence to the collective bargaining agreement.") Article VII of the CBA governs employee seniority rights. Therefore, any rights plaintiff has in seniority is directly tied to the terms of the labor agreement between defendant and the union representing plaintiff.

Article VII contains 13 sections regarding the calculation of seniority rights. In particular Section F states:

Seniority shall be computed from the employee's date of last hiring by the Employer, in or transfer into, the bargaining unit covered by this Agreement and shall be broken by discharge, voluntary quit, failure to report after notice of recall as herein provided or by layoff for lack of work for twenty-four (24) consecutive months.

Any resolution of plaintiff's claim of a seniority right will involve interpretation of the terms of Section F. In particular, a court would have to interpret "date of last hiring" and "voluntary quit." This brings plaintiff's claims within the scope of the CBA. Because the resolution of these issues necessitates examination of the CBA, the claims are preempted. The Court is foreclosed by deference to the arbitration clause to interpret the CBA.

·The conclusion of Section 301 preemption is further supported by the wording of the Massachusetts Workers' Compensation Statute. Both Sections 75A and 75B contain a proviso stating that "[i]n the event any right set forth in this section is inconsistent with an applicable collective bargaining agreement," the agreement shall prevail. Sections 75A, 75B(3); *Martin v. Shaw's Supermarkets, Inc.,* 105 F.3d 40, 42–43 (1st Cir.1997). The Court of Appeals for the First Circuit in both *Magerer* and *Martin* held Sections 75A and 75B to their literal wording. *Martin,* 105 F.3d at 43. *Magerer,* 912 F.2d at 529.

Plaintiff's claims are similar to those in *Magerer* and *Martin*. In *Magerer*, the plaintiff alleged that his dismissal was in retaliation for exercising his rights under the Massachusetts Workers' Compensation Statute, in violation of Mass.Gen.L. ch. 152, § 75B. The Court of Appeals stated that

> This provision makes clear that to the extent that the collective bargaining agreement provides standards to govern the conduct underlying plaintiff's retaliatory discharge claim, the claim will be governed by the standards of the agreement, rather than the standards of ch. 152 § 75B. And to that extent, claims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301.

*Magerer*, 912 F.2d at 529. Because the CBA at issue in *Magerer* contained "several provisions that could be construed to govern the conduct underlying plaintiff's retaliatory discharge claim" and, thus, the resolution of that claim "depend[ed] on an interpretation of the collective bargaining agreement, so that the claim [was] completely preempted by Section 301." *Id.* at 530. More recently in *Martin*, the Court of Appeals again addressed preemption under the Workers' Compensation Statute. The Court of Appeals concluded that the state law claims were preempted "not because the collective bargaining agreement is inconsistent with the state claims asserted, but because it may be so and requires interpretation." *Martin*, 105 F.3d at 44. Here, as in *Magerer* and *Martin*, a key provision of the CBA could be construed to govern the conduct underlying plaintiff's claims.

### CONCLUSION

The parties have addressed the issue of whether Section 301 preempts plaintiff's state law claims. The Court concludes that under Supreme Court and First Circuit precedent, both of plaintiff's state law claims are preempted. Accordingly, plaintiff's complaint no longer asserts any remaining viable claims for determination in this district court. Defendant has filed a motion to dismiss and a motion for summary judgment. The Court rules that it is appropriate to enter summary judgment for defendant. Labor-management relations are matters of paramount national interest and must be governed by federal law, not state statutes. The Court notes that plaintiff is not foreclosed from filing whatever claims, if any, still exist under federal law.

Plaintiff's Motion to Remand is denied, and Defendant's Motion for Summary Judgment is granted.

SO ORDERED.